611 S.E.2d 521

**Debra CLINTON, Appellant,**

**v.**

**WEST AMERICAN INSURANCE COMPANY, a member of the Ohio Casualty Group, and Palmetto Insurance Assoc., Inc., Defendants,**

**of whom West American Insurance Company is Respondent.**

**No. 3969.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2005.
Decided March 28, 2005.

114

Randall L. Chambers, of Greenville, for Appellant.

Jennifer D. Eubanks, of Greenville, for Respondent.

PER CURIAM:

Debra Clinton appeals the trial court's grant of summary judgment to West American Insurance Company, finding West American made a meaningful offer of underinsured motorist coverage. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP; *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 114–15, 410 S.E.2d 537, 545 (1991). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Strother v. Lexington County Rec. Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998) (citation omitted). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party...." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

Clinton argues the trial court erred in finding West American made a meaningful offer to Joy Clinton, because although she specifically rejected UIM coverage on the offer form, she filled in "25/50" on the blank line located on the UIM offer form and no premium amount was filled in by the agent or insurer. In light of *Progressive Casualty Ins. Co., v. Leachman*, 362 S.C. 344, 608 S.E.2d 569 (2005) (finding for purposes of a meaningful offer of UIM, S.C.Code Ann. § 38–77–350(A) does not require insurers to provide a blank line for insured to write in any amount of coverage up to the policy limit) and the reasoning set forth by the trial court, we conclude the trial court properly found a meaningful offer was made to Joy Clinton and the policy should not be reformed to include underinsured motorist coverage. The order granting summary judgment to West American is hereby affirmed and reprinted as part of the opinion of this court.

## THE ORDER OF JUDGE JAMES JOHNSON, JR.

Before the Court are both the plaintiff's and the defendant's motions for summary judgment. These matters came before the Court for hearing on January 8, 2004. The plaintiff was represented by Mr. Randall Chambers of the Joel Bieber Firm of Greenville and the defendant was represented by Ms.

Jennifer Eubanks of Gallivan, White & Boyd, P.A. of Greenville. The parties both agreed that there were no genuine issues of fact before the Court. For the reasons set forth below, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

## 1. *Procedural Background*

On May 24, 1999, Debra Clinton ("Clinton") was a passenger in a 2000 Plymouth Neon LX, which was owned and operated by Joy Clinton, when that car was struck from the rear by a car operated by Courtney Young. Clinton filed suit against Courtney Young, alleging personal injury as a result of the collision in an action filed in the Court of Common Pleas for Greenwood County, C.A. No. 00–CP–24–982. Courtney Young's liability insurer, Farm Bureau, tendered its limits of $25,000 and Clinton tendered a claim for underinsured motorist ("UIM") coverage to Joy Clinton's insurer, West American. West American determined that Joy Clinton had declined UIM coverage after a valid and meaningful offer was made to her and declined to pay the claim.

Joy Clinton had only minimum limits coverage, $15,000 per person, $30,000 per accident and $10,000 for property damage per accident, on the 2000 Plymouth Neon LX at the time of the accident. Debra Clinton alleged over $45,000 in medical expenses as a result of the accident. In order to resolve the tort action, the parties entered into a Consent Order of Dismissal in which they stipulated that Clinton was entitled to file a declaratory judgment action to determine whether UIM coverage existed under the policy issued to Joy Clinton and that "in the event that a court of law determines that UIM coverage exists, recovery shall be in the amount of $15,000, regardless of costs and attorney's fees."

Clinton filed the above-captioned action for declaratory judgment on May 21, 2002, alleging that the terms of the West American policy issued to Joy Clinton included UIM coverage in the amount of $15,000 per person or, in the alternative, that West American failed to make a meaningful offer of UIM coverage and that the West American policy should be reformed to include UIM coverage in the amount of $15,000 per person. Clinton also named Palmetto Insurance Assoc., Inc.,

Joy Clinton's insurance agent, as a defendant. Clinton voluntarily dismissed Palmetto as a defendant in the action by a Consent Order filed July 25, 2002.

## 2. *Factual Background*

On September 24, 1992, Joy Clinton submitted on application for personal automobile insurance with the David Stuart Agency in Greenwood. [footnote omitted]. A copy of her application was before the Court and constitutes a part of the record. On the first page of that application, Clinton listed three automobiles to be insured: a 1987 Chevrolet Celebrity, a 1987 Dodge Ram 50 and a 1979 GMC Pickup. Also on that page, she listed the coverages she sought to purchase for each automobile. The application shows that she sought bodily injury liability coverage in the amount of $50,000 per person and $100,000 per accident, and property damage liability coverage in the amount of $25,000 per accident. She also sought uninsured motorist ("UM") coverage in the amount of $25,000 per person, $50,000 per accident and $25,000 in property damage per accident. The section where Joy Clinton would have filled in the amounts of UIM coverage she sought is blank.

On the second page of the application, under the section entitled Binder/Signature, the application indicates that the insurance binder became effective on September 24, 1992. That section also reads: "This company binds the kind(s) of insurance stipulated on this application." The application is signed by Joy Clinton and dated September 24, 1992.

On that same date, Joy Clinton filled out a document entitled "Offer of Optional Additional Uninsured and Underinsured Automobile Insurance Coverages South Carolina" ("Offer"). The Offer is before the Court and constitutes a part of the record in this matter. The document is a form generated by the South Carolina Department of Insurance and bears the notation "SCDI Form Number 2006". The first page of the Offer contains an explanation of coverages. Regarding UIM coverage, the document reads:

> **Underinsured Motorist Coverage** compensates you, or other persons insured under your automobile insurance policy, including passengers within your motor vehicle, for amounts

that you, or your passengers, may be legally entitled to collect as damages from an owner or operator of an at-fault underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle that is covered by some form of liability insurance, but that liability insurance coverage is not sufficient to fully compensate you for your damages.

Your automobile insurance policy does not automatically provide any Underinsured Motorist Coverage. You have, however, a right to buy Underinsured Motorist Coverage in limits up to the limits of liability coverage you will carry under your automobile insurance policy. Some of the more commonly sold limits of Underinsured Motorist Coverage, together with the additional premiums you will be charged, are shown on this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill-in those limits. If your insurance company is allowed to market those limits within this State, your insurance agent will then fill-in the amount of increased premium.

It is important for you to understand that if you reject either one of these coverages upon this Form and if you are involved in an automobile accident, this Form then may be used by your insurance company as evidence against you if it denies your claim for additional Uninsured Motorist Coverage or Underinsured Motorist Coverage.

If you do not complete this Form and return it to your insurance company or to your insurance agent within 30 days from your receipt of this Form, the law requires that additional Uninsured Motorist Coverage and Underinsured Motorist Coverage, at the same limits as the automobile liability insurance which you purchase, must be automatically added on to your automobile insurance policy. You will be required to pay an additional premium for each of these two coverages. If you do not pay that additional premium, your automobile insurance policy may then be cancelled.

In the future, if you wish to increase or to decrease your limits of additional Uninsured or Underinsured coverage, you must then contact either your insurance agent or your insurance company. You will not be presented with another copy of this Form by your insurance agent or by your

insurance company upon renewal of your automobile liability insurance policy.

On the second page of the Offer, the offer of additional UM coverage appears. Four limits of additional UM coverage are shown, along with the increased premium rate. Those limits are $15,000/$30,000/$5,000; $25,000/$50,000/$10,000; $50,000/ $100,000/$25,000; and $100,000/ $300,000/$50,000. In addition, a blank was left for the insured to fill in any other limit of additional UM in which she was interested. She filled in "25/50/25". The Offer also asked whether the insured wished to purchase additional UM coverage and a check mark appears beside the answer "yes."

On the third page of the Offer, the offer of UIM coverage appears. The same four limits of additional UM coverage are also listed as offers of UIM coverage. In addition, a blank was left for the insured to fill in any other limit of UIM in which she was interested. She filled in "25/50/". Where asked whether she wished to purchase UIM coverage, a check mark appears beside the answer "no." The Offer also requires the insured to sign her name if she did not desire UIM coverage. Joy Clinton's signature appears on that line.

Also on the third page of the Offer is a section entitled "Applicant's Acknowledgment." That section reads as follows:

I hereby acknowledge that I have read, or have had read to me, the above explanations and offers of additional Uninsured Motorist Coverage and Underinsured Motorist Coverage. In [sic] have indicated whether or not I wish to purchase each coverage in the spaces provided. I further understand that the above explanations of these coverages are intended only to be brief descriptions of Uninsured Motorist Coverage and Underinsured Motorist Coverage, and that payment of benefits under any of these coverages is subject both to the terms and conditions of my automobile insurance policy and to the State of South Carolina's laws.

Below the acknowledgement, Joy Clinton printed and signed her name, printed her address and dated the document September 24, 1992.

On September 24, 1992, West American issued a policy of automobile insurance to Joy Clinton bearing policy number DPW 05109293. See affidavit of Tom Dahl which was before

the Court and constitutes part of the record in this matter. The policy was renewed several times in the intervening years. In 1999, prior to the motor vehicle accident with Courtney Young, Joy Clinton decreased her liability limits to $15,000/$30,000/$10,000. See affidavit of Joy Clinton which was before the Court and constitutes a part of the record in this matter. On May 21,1999, Joy Clinton added the 2000 Plymouth Neon LX to the policy. She did not request to add UIM coverage to any of the vehicles covered by the policy. At the time of the accident, the policy declarations page shows that the 2000 Plymouth Neon LX had $15,000/$30,000/$10,000 in both liability and UM coverage; the declarations page shows that the 2000 Plymouth Neon LX was not covered by UIM coverage. See Declarations Page which was before the Court and constitutes a part of the record in this matter.

Joy Clinton submitted an affidavit in which she alleged that she believed that shortly after she purchased coverage in 1992, she noticed that she was paying for "double Uninsured and Underinsured Coverage." She alleges that she called her agent and told him that she did not want to pay twice for the same thing. She alleges that her agent had her come to the office and sign a blank form. However, she does not identify the form she signed. She did not recall filling out the Offer, but admitted that the signatures on the Offer appear to be hers. She also alleged that no one ever told her how much the premium would be for UIM coverage in the same limits as her liability coverage. Finally, she alleged that it was never her intention to cancel or reject UIM coverage.

### 3. *Analysis*

As an initial matter, and setting aside the issue of whether a meaningful offer of UIM coverage was made, the policy, as it was issued to Joy Clinton, did not provide UIM coverage for the 2000 Plymouth Neon LX. The policy declarations page indicates that no UIM coverage was issued for the Neon and no premium charged for UIM coverage. Moreover, Clinton, in her brief in support of her Motion for Summary Judgment does not argue that Joy Clinton's policy, as issued, contained UIM coverage for the Neon. As there is no indication to the contrary, this court concludes that the automobile insurance

policy *as issued* to Joy Clinton did not provide UIM coverage for the Neon.

West American, as the insurer, has the initial burden of proving that a meaningful offer of UIM coverage was made to Joy Clinton. *Jackson v. State Farm Mut. Auto. Ins. Co.,* 301 S.C. 440, 392 S.E.2d 472 (Ct.App.1990), *aff'd as modified,* 303 S.C. 321, 400 S.E.2d 492 (1991). The test for determining whether an effective offer was made was set forth by the Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987):

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing;

(2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms;

(3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and

(4) the insured must be told that optional coverages are available for an additional premium.

*Wannamaker,* at 521, 354 S.E.2d at 556. If the insurer fails to make a meaningful offer of UIM coverage, the policy will be reformed to provide UIM coverage in the amount of the policy's liability limits. *Id.*

In the present case, the plaintiff alleges that the UIM offer was not meaningful for two reasons. First, Clinton alleges that the Offer does not reference the policy number and, therefore, there is no way of knowing whether the Offer was made in connection with the policy which covered the Neon or some other policy. Second, Clinton alleges that the Offer was not meaningful because it failed to provide a "list of available limits and the range of premiums for the limits" as required by § 38–77–350(A)(2) of the South Carolina Code of Laws. Specifically, Clinton alleges that because she filled in "25/50" in the UIM offer section of the form and no premium amount was filled in by the agent or insurer, she is entitled to reform her policy to include UIM coverage.

Clinton's argument that the Offer was invalid because it did not reference her policy number is meritless. First, neither the *Wannamaker* test nor the statutory law applicable to UIM coverage requires the offer form to contain the policy number. Second, the Offer was signed and dated the same date that

Clinton made her application for personal automobile insurance coverage. Because a binder was issued that day, the insurer had likely not even issued a policy number on September 24, 1992. Finally, as made clear by the affidavit of Tom Dahl, a Personal Lines Underwriting Manager for the Ohio Casualty Group, West American issued only one policy of insurance to Joy Clinton, that being policy number DPW 05109293. Moreover, Joy Clinton, in her affidavit, does not allege that she ever held more than one policy with West American or the Ohio Casualty Group. Accordingly, because no other policy of insurance has ever been issued to Joy Clinton and because the date of the Offer and the policy application are identical, it is clear that the Offer signed by Joy Clinton was made in connection with her policy which covered the Neon.

West American made a valid and meaningful offer of UIM coverage to Joy Clinton by virtue of its Offer dated September 24, 1992. The Offer was commercially reasonable, being made on a form approved by the South Carolina Department of Insurance in compliance with § 38–77–350 of the South Carolina Code of Laws. The South Carolina Court of Appeals has specifically held that the form used by West American, Form 2006, meets the requirements of § 38–77–350. *Osborne v. Allstate Ins. Co.,* 319 S.C. 479, 462 S.E.2d 291 (Ct.App.1995) *superceded by statute as stated in Moody v. Dairyland Ins. Co.,* 354 S.C. 28, 579 S.E.2d 527 (Ct.App.2003); *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 475 S.E.2d 758 (S.C.1996).

Clinton argues that because Joy Clinton filled in "25/50" in the blank left for the insured to fill in other limits of UIM coverage on the Offer and the agent did not fill in the premium amount, the Offer is rendered unmeaningful. Clinton argues that by filling in "25/50" in the UIM coverage blank, the insurer was under a duty to fill in the premium. However, this argument ignores the remainder of the Offer. First, "25/50" is not a complete coverage amount. There is no amount listed for property damage. Accordingly, no premium amount *could* be determined because the amount requested is not complete. Second, Joy Clinton answered the question about whether she wanted UIM coverage in the negative, checking "no," and signed her name to that effect. Joy Clinton's declination of UIM coverage is corraborated [sic] by

her insurance application which, while requesting additional UM coverage, does not request UIM coverage. Thus, because Joy Clinton declined UIM coverage, there was absolutely no need or point in determining a premium for "25/50."

### 4. *Conclusion*

Based on the foregoing, this Court denies the plaintiff's motion for summary judgment, grants the defendant's motion for summary judgment and declares that the policy of automobile insurance, policy no. DPW 05109293, does not, as issued, provide UIM coverage for the 2000 Plymouth Neon LX listed on the policy; that a valid and meaningful offer of UIM coverage was made to Joy Clinton on September 24, 1992; that Joy Clinton declined that valid and meaningful offer of UIM coverage on September 24, 1992; that the policy of automobile insurance issued by West American to Joy Clinton, policy no. DPW 05109293 cannot legally be reformed to provide UIM coverage; and that, on May 24, 1999, the 2000 Plymouth Neon did not have UIM coverage under West American policy number DPW 05109293.

**AFFIRMED.**

HEARN, C.J., KITTREDGE and WILLIAMS, JJ., concur.