## 11816

### *EX PARTE* KING
### *EX PARTE* KING, EXECUTOR

#### (128 S. E., 850)

1. WILLS—ERRORS IN INSTRUCTIONS HARMLESS IN CONTEST WHERE COURT COULD HAVE DIRECTED VERDICT FOUND.—On appeal from decree admitting will to probate, errors in the Court's charge will be regarded as harmless and immaterial, where, upon the undisputed facts and the law applicable thereto, the Court would have been warranted in directing the verdict which was found.

2. WILLS—ESSENTIAL TO VALIDITY THAT TESTATOR KNOW AND UNDERSTAND CONTENTS AT TIME OF EXECUTION.—It is essential to validity of will that testator know and understand contents at time of execution.

3. WILLS—KNOWLEDGE OF CONTENTS OF WILL PRESUMED FROM FACT OF EXECUTION WITH LEGAL FORMALITY.—In case of execution with legal formality of will by testator of sound mind, there is presumption that testator knew and understood contents.

4. WILLS—MISTAKE OF LAW OR FACT, IN ABSENCE OF STATUTE, WILL NOT INVALIDATE WILL, UNLESS IT GOES TO IDENTITY OF INSTRUMENT OR CONSTITUTES FUNDAMENTAL ERROR.—Except where modified by statute, it is rule that validity of will is not affected by mere mistake of either law or fact, except such mistake go to the identity of the instrument or is such as might be classed as fundamental error.

5. WILLS—VALIDITY OF WILL FOR PURPOSES OF PROBATE DOES NOT REQUIRE THAT TESTAMENTARY PURPOSES OF DECEDENT SHALL BE THEREBY EFFECTUATED AS A WHOLE.—It is not essential to validity of will, for purposes of probate, that testamentary purposes of decedent shall be thereby preserved and effectuated as a whole.

6. WILLS—SCRIVENER'S MISTAKE IN DESIGNATION OF TESTATOR'S CHILDREN IN WILL HELD NOT TO INVALIDATE IT FOR PROBATE PURPOSES.— That scrivener of will mistakenly used name "Bessie" for "Lessie" and "Lessie" for "Bessie" *held* not to so invalidate will as to warrant denial of probate, where descriptive language clearly indi-

cated persons intended by decedent, and where there remained other provisions of will not affected by such mistake.

7. Wills—Probate Court Not Proper Tribunal to Construe Will.— while the Court of Probate may properly scrutinize and construe contents of will offered for probate, to determine such question as whether mistake is fundamental or partial, it is not the proper tribunal for the construction of a will generally.

8. Wills—Effect of Scrivener's Mistaken Use of Name Held Question of Construction Not Required to be Determined by Probate Court Trying Issue of Devisavit Vel Non for Purpose of Probate. —Whether scrivener's mistaken use of name Bessie for Lessie and Lessie for Bessie was sufficient to defeat testator's intent held question of construction which Probate Court, trying issue of devisavit vel non for purpose of admitting paper to probate or excluding it, was under no judicial duty to determine.

9. Wills—Latent Ambiguity of Will May be Corrected or Removed by Court of Construction.—A latent ambiguity in a will is susceptible of correction by Court of construction, or may be removed by making descriptions prevail over names erroneously written.

Before Bonham, J., Anderson, June, 1924. Affirmed.

Proceeding to prove the will of J. H. King, Deceased, in due form of law. From an order admitting the will to probate the contestants appeal.

*Mr. A. H. Dagnall,* for appellants, cite: *Necessity of showing knowledge by testator of contents of will:* L. R. A., 1918-D, 747; 40 Cyc., 1101; 1 Bail., 96. *What mistake sufficient to upset will:* 40 Cyc., 1143. *Mistake will not warrant reforming will; it must be set aside:* 28 R. C. L., 203, Sec. 164.

*Mr. Leon L. Rice,* for respondent, cites: *Latent ambiguities will be corrected:* 2 McMul., 123; 77 S. C., 456; DeS. Eq., 85. *Execution being proven, burden is on contestants to show incapacity or undue influence:* 16 S. C., 46; 114 S. C., 275; 86 S. C., 370; 49 S. C., 159; 1 Bail., 92; 82 S. C., 40; 4 McC., 183; 7 Rich., 474.

July 31, 1925.

The opinion of the Court was delivered by Mr. Justice Marion.

The appeal is from a decree of the Circuit Court, confirming an order of the Probate Court, admitting a will to probate in solemn form.

The question, broadly, is whether an admitted mistake of the scrivener in writing "Bessie" for "Lessie" and "Lessie" for "Bessie," in the paper propounded for probate as a will, should be held to furnish a sufficient evidentiary basis for a finding of fact that the testator did not have such knowledge of the contents of the instrument at the time of its execution as is essential to the making of a valid will.

The pertinent facts, undisputed, are as follows: J. H. King, an aged, illiterate, and infirm man, "procured a magistrate to draw his will," and executed the paper thus drawn with all due formality. At the time of the execution of the instrument Mr. King had a wife and "two sets" of children. All of his children were normal, except two, viz., Fannie King, who was weak mentally, and Lessie King, who had been a physical cripple from infancy. His daughter Bessie King was normal. The scrivener testified, without objection, that J. H. King "had intended to especially provide for Lessie King, and that he (the scrivener) * * * had made the mistake of naming Bessie King throughout the will instead of Lessie King, although the will was read over to testator." The decedent left property worth $7,000 or $8,000.

On the trial in the Circuit Court, in response to questions submitted by the Court, the jury found: (1) That J. H. King in the second paragraph of this paper propounded as his will intended "to say 'Lessie King' where 'Bessie King' is mentioned"; (2) that at the time of the signing of the paper J. H. King knew the contents thereof, (3) that at the time of the execution of the paper J. H. King had testamentary capacity; (4) that the paper was executed in the presence of three witnesses; (5) that the paper propounded was the last true will and testament of J. H. King.

The contents of the paper, are in substance, as follows:
(1) A provision for the payment of debts by the executor.
(2) The following disposition of the decedent's entire
estate: "I will to my beloved wife, viz., Margaret Ann
King, my entire estate * * * for her to have * * *
so long as she lives, provided, that my said wife shall
keep, board, and clothe my two afflicted children, viz.,
Fannie King and Bessie King, so long as she, my said wife,
shall live, and at my said wife's death, I will that all my
estate shall become the property of my above named
afflicted child, viz., Bessie King, for the keeping, boarding
and clothing of herself and my other afflicted daughter, so
long as they both shall live * * * and after their death
* * * to be equally divided among my eleven children,
viz., J. T. King, Warley King, William King, Bee
Mitchell, Obed King, Roalle Gossett, Noree King, Calhoun
King, G. Evans King and Lessie King, share and share
alike," etc. (3) The appointment of G. Evans King as
executor, with "full power and authority to execute all
papers necessary for the final winding up and distribution
of my estate."

The appellants' position is that upon the foregoing
facts they were entitled to have the question as to
whether J. H. King knew and understood the con-
tents of this paper answered in the negative, and the appeal
is predicated upon the view that, in submitting that question
to the jury, the trial Court incorrectly or inadequately
charged the law. But the facts are undisputed, and if under
the law applicable thereto the Court below would have been
warranted in withdrawing that question, or in directing the
verdict which was found, the details of the Court's charge,
which, it is alleged, indirectly contributed to such finding,
are immaterial and could in no event furnish ground for
reversal. Since we think the verdict could properly have
been directed as it was found, it is believed that the appeal
can be best disposed of on its merits by a statement of the

views which lead to that conclusion, without attempting to consider the exceptions in detail.

Appellants' fundamental proposition, accorded due 2, 3 recognition, as we think, by the learned Circuit Judge, that it is essential to the validity of a will that the testator knew and understand the contents thereof at the time of execution, unquestionably embodies a sound general principle of law. 40 Cyc., 1101. *Tomkins v. Tomkins,* 1 Bailey, 96; 19 Am. Dec., 656; note to *Re* Gluckman, L. R. A., 1918D, 747. But it is an equally elementary principle that, in the case of the execution of a will by a testator of sound mind, there is a presumption from the fact of execution in accordance with the legal formalities that the testator know and understood the contents thereof. *Black v. Ellis,* 3 Hill, Law, 68. Since it is undisputed in this case that the paper propounded was executed with all due formality by a capable testator, the presumption arose that it was executed with knowledge of its contents. That presumption was reinforced by the further undisputed fact that the paper was read over to the testator before signing. The case for contestants therefore turns upon the validity of their contention that the admitted mistake of the scrivener was a fact of sufficient probative force to rebut that presumption by raising such an inference of fact that the testator did not know and understand the contents as would warrant the conclusion of law that the paper was invalid as a will and not entitled to probate.

That contention may be appraised first from the 4 viewpoint of the law of mistake as applied to wills.

It has been said (28 R. C. L., 142, § 96) that, "except when modified by statute, the general rule is that the validity of a will is not affected by a mistake of either law or fact." But that statement as a general rule is open to the criticism that it is inapplicable to a mistake which goes to the identity of the instrument, or to what one text-writer (Schouler [2d Ed.] § 215) calls "fundamental

error," as where, for example, two wills are drafted for
different persons and one party signs that intended for an-
other.   In such case it would seem clear that the mistake
would invalidate the instrument, since it would not be the
paper upon which the mind of the putative testator operated
with testamentary purpose.   And even where the mistake is
partial (that is, where it goes merely to the changing of
certain provisions of the will from what the testator is
shown to have intended) the question of whether such par-
tial mistake may soundly be held to invalidate a will for
purposes of probate is one as to which the authorities seem
to be in a state of some confusion.   Thus, in our own case
of *Whitlock v. Wardlaw,* 7 Rich. Law, 453, the possibility
that such a mistake might invalidate a will would seem to
be recognized in a negative way in the following expression
by Judge O'Neil:

"How a mere mistake by a draftsman in a will not
amounting to fraud, or not calculated to materially change
the testator's disposition of his estate, can vitiate the will,
I confess I have never been able to perceive." (Italics
added.)

See, also, dicta of Chancellor Job Johnston in *Rosborough
v. Hemphill,* 5 Rich. Eq., 95.

And in a popular text-book (40 Cyc., 1143) it is said:

"The Courts will set aside a will which was executed by
the testator under a mistake as to the character of the in-
strument or a material part of its contents, as the instru-
ment signed by him is not really his will."

In view, however, of the consideration that "there
is no such doctrine of law as requires the testator's
intent to be indivisible, or defeats the will in toto,
inasmuch as the testator's intention must fail in part"
(Schouler on Wills [2d Ed.] § 218), we think the proposi-
tion for which appellants contend, that a will may be de-
clared invalid and refused probate on the ground that it
was executed under a mistake "as to a material part of its

contents," is unsound.  Obviously, a will executed under a mistake as to a material part of its contents might be executed under no mistake whatever as to other equally material parts thereof.  The doctrine that it is not essential to the validity of a will for purposes of probate that the testamentary purposes of the decedent shall be thereby preserved and effectuated as a whole, has been expressly recognized and applied by this Court in a number of cases.  Thus in *Myers v. O'Hanlon*, 12 Rich. Eq., 196, 200, the Court said:

"Upon the question of probate, the inquiry is, whether there be propounded a valid will.  If valid in part, though void in part it is still a will, and must be admitted to probate accordingly."

That the invalidity of a part of the contents of a will, however material, will not defeat the will as a whole and exclude it from probate is expressly held in *Joliffe v. Fanning*, 10 Rich. Law, 186, 194, and in *Prater v. Whittle*, 16 S. C., 40, 46.  Between a will invalid in part because of fraud (*Myers v. O'Hanlon, supra*), illegality (*Joliffe v. Fanning, supra*), or revocation (*Prater v. Whittle, supra*), and a will in which testamentary intention is defeated or subverted in part by mistake, there would seem to be little, if any, logical basis for a distinction in determining whether the instrument so affected is entitled to probate.  In that view we think that, where the mistake is as to a separable part of the contents of the will propounded, and there remain other provisions of the instrument which are not dependent upon or controlled by the portion of the contents affected by the error, the mistake should not be held to invalidate the will.  Nor is a different conclusion required when such partial mistake is considered from the angle of the principle that it is essential to the validity of a will that the testator know and understand the contents.  Granting that a mistake as to part of the contents of the paper would support an inference that the testator was ignorant of the contents of the paper to the extent it was affected by the

mistake, such mistake obviously could furnish no basis for an inference that the testator did not know and understand the separate and distinct provisions of the will as to which there was no mistake.

In the case at bar it is apparent from a reading of the will that the scrivener's mistake in interchanging the names of the testator's children, Bessie and Lessie, had to do with a part of the contents of the will clearly separable from its other parts. Even if the effect of that mistake were to defeat or subvert the testator's intention as to the portions of his estate which should go to those two children, the other parts of the will providing for the testator's wife, for the afflicted daughter Fannie, for the other children, and for the administration of his estate through an executor, would remain intact and unaffected. From the viewpoint of the law of mistake, it follows that appellants' contention that the mistake here in question was sufficient to raise or support an inference that testator was without the knowledge of the contents of the paper essential to the making of a valid will cannot be sustained.

But that conclusion is even more clearly required from the viewpoint of the Probate Court's province or duty to determine that the effect of this mistake as an evidentiary fact was to raise an inference that the testator was without knowledge of the contents of the paper. Obviously, unless the effect of the mistake was to defeat the testator's intention and work a miscarriage of the testator's purpose with respect to his two children Bessie and Lessie, whose names were interchanged, the fact of this mistake could have no probative force to show that the testator was without validating knowledge of the contents of the will. And until it was determined that the effect of the mistake was to subvert the testator's real intention and defeat the testamentary purposes of the testator, no probative force to establish such lack of knowledge could

properly be attributed to the fact of the mistake. Under the evidence here adduced, as to the admissibility of which this record raises no question, whether the effect of this mistake was to defeat or subvert the testator's intention was properly a question of construction upon which the Courts, charged with the duty of trying the issue of *devisavit vel non* for the purpose of admitting the paper to probate, or excluding it, were under no judicial duty to pass. While the Court of Probate may properly scrutinize and construe the contents of the will offered for probate (*Joliffe v. Fanning, supra*), for the purpose of determining such a question as whether a mistake is fundamental or partial, it is not a tribunal of construction. In *Prater v. Whittle, supra,* the Court said:

"The probate of a will settles all questions as to the formalities of its execution and the capacity of the testator, but does not affect the validity or invalidity of any particular clause or settle any question of construction. * * * All questions as to the construction of the will must be settled by subsequent proceedings in the equity jurisdiction."

The extrinsic evidence here adduced as to the state of the testator's family clearly disclosed a latent ambiguity—repugnancy between the names and the descriptions of the two children Bessie and Lessie, mentioned in the will—which ambiguity raised a question of construction for a Court of construction. That such latent ambiguity is susceptible of correction or removal by a Court of construction is well settled. See *Jennings v. Talbert,* 77 S. C., 454; 58 S. E., 420. *Donald v. Dendy,* 2 McMul., 130. *Patterson v. Leith,* 2 Hill Eq., 17. That the result of such construction might well be to remove the ambiguity by making the descriptions of the will prevail over the names as erroneously written, is not open to question. *Siegley v. Simpson,* 73 Wash., 69; 131 P., 479; 47 L. R. A. (N. S.), 514, and note thereto, pages 515-542, Ann. Cas., 1915B, 63. *Woman's Foreign Missionary Society*

*v. Mitchell*, 93 Md., 199; 48 A., 737; 53 L. R. A., 711; and see *Power v. Lynah*, 2 Desaus., 52. The contestants' requested instruction to the effect that a Court of Equity has no power to reform a will was therefore inapplicable to the case; no question of reformation was involved. Since the Court, on the trial of the issue of the validity of the will for purposes of probate, could not determine—or certainly was under no judicial obligation to determine—the question of construction upon which depended the evidentiary force of the scrivener's mistake to establish the testator's ignorance of the contents of the will, it is clear, we think, that appellants' position is untenable.

The decree of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and COTHRAN concur.