626 S.E.2d 6

**Darla R. FLOYD and Dana Nichole Floyd, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

No. 26088.

Supreme Court of South Carolina.

Heard Nov. 2, 2005.
Decided Dec. 28, 2005.
Rehearing Denied Feb. 14, 2006.

254

Bryan D. Ramey, of Bryan D. Ramey & Associates, P.A., of Piedmont, and John S. Nichols, of Bluestein & Nichols, of Columbia, for Plaintiffs.

John Robert Murphy and Adam J. Neil, both of Murphy & Grantland, P.A., of Columbia, for Defendant.

Justice BURNETT:

We accepted this certified question regarding the interpretation of a statute addressing the offer of underinsured motorist coverage to insured persons pursuant to Rule 228, SCACR.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are drawn from the district court's certification order and an appendix filed by the parties. Plaintiff Darla R. Floyd (Darla) is the mother of Plaintiff Dana N. Floyd (Dana). Dana suffered serious injuries in an automobile collision on September 19, 2003, when her car was struck by another

automobile. The at-fault driver's liability carrier paid its policy limits of $15,000 to Dana in exchange for a covenant not to execute a judgment against the at-fault driver.

Dana filed a claim with Nationwide Mutual Insurance Co. (Nationwide), seeking to recover against underinsured motorist (UIM) coverage. Dana, a Class I insured,[1] sought to stack UIM coverages for each of three vehicles covered by the Nationwide policy purchased by her mother. Dana sued Nationwide after it refused to pay benefits and the case was removed to federal district court on Nationwide's motion.

Darla purchased a Nationwide policy in 1997. A Nationwide agent's employee completed a form titled "Offer of Optional Additional Uninsured and Underinsured Automobile Insurance Coverages." The employee checked the "no" box which followed the question "Do you wish to purchase underinsured motorists coverage?" The employee checked the "yes" box which followed the question "Do you wish to purchase additional uninsured motorists coverage?" and wrote "15/30" and "25,000" on lines for selecting the desired limits.

Darla signed the UIM offer form indicating her rejection of UIM coverage, thereby purchasing only the minimum liability limits and corresponding uninsured motorist (UM) coverage. Darla also signed the "Applicant's Acknowledgment" at the end of the UIM offer form. This paragraph stated:

I hereby acknowledge that I have read, or have had read to me, the above explanations and offers of additional uninsured motorist coverage and underinsured motorist coverage. I have indicated whether or not I wish to purchase each coverage in the spaces provided. I further understand that the above explanations of these coverages are intended only to be brief descriptions of uninsured motorist coverage and underinsured motorist coverage, and that payment of benefits under any of these coverages is subject both to the

---

1. Class I insureds include the named insured and his or her spouse and relatives residing in the same household. Class II insureds are those using the insured vehicle with permission of the named insured and a guest in the motor vehicle. In South Carolina, only Class I insureds can stack coverage. *See e.g. Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.,* 331 S.C. 506, 509, 498 S.E.2d 865, 866 (1998).

terms and conditions of my automobile insurance policy and to the State of South Carolina's laws.

Darla did not otherwise personally mark the UIM offer form to select desired coverages and limits.

Darla increased the coverage limits on her policy in 2000. An employee in the Nationwide insurance agent's office completed another UIM offer form, checking the "no" box which followed the question "Do you wish to purchase underinsured motorist coverage?" The agent's employee checked the "yes" box which followed the question "Do you wish to purchase additional uninsured motorist coverage?" and wrote "100/300" and "50,000" on lines for selecting the desired limits.

Darla again signed the form in two places—rejecting UIM coverage and below the "Applicant's Acknowledgment," the same paragraph set forth above. Darla did not otherwise personally mark the UIM offer form to select desired coverages and limits.

At her deposition, Darla testified she signed the offer forms, but did not read the forms or have someone read them to her. No one explained or discussed UIM coverage or the offer form with her, and she did not understand UIM coverage at the time she signed the forms. She did not recall reading the acknowledgment paragraph before signing the forms. "To the best of my rememberance (sic), I was told what I needed and given the paper to sign," Darla testified. "I was given the paper to sign and I signed it. I was not explained that I needed to read it."

Nationwide relies solely on the two UIM offer forms as proof that it made a meaningful offer of UIM coverage to Darla, and not on any verbal discussions or explanations of the coverage. The parties agree both UIM forms are identical to South Carolina Department of Insurance Form 2006 and contain the content required by S.C.Code Ann. § 38–77–350(A) (2002).

## QUESTION

Is an offer form in which the blanks were filled in by an insurance agent or his employee in the presence of the named insured, and the form was then signed by the named

insured, properly completed and executed pursuant to S.C.Code Ann. § 38–77–350(B) (2002), such that the form may be conclusively presumed to constitute a meaningful offer of UIM coverage? [2]

## STANDARD OF REVIEW

In answering a certified question raising a novel question of law, the Court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of this state and the Court's sense of law, justice, and right. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. § 14–3–320 and –330 (1976 & Supp. 2004), and S.C.Code Ann § 14–8–200 (Supp.2004)); *Osprey, Inc. v. Cabana Ltd. Partnership,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same); *Antley v. New York Life Ins. Co.,* 139 S.C. 23, 30, 137 S.E. 199, 201 (1927) ("In [a] state of conflict between the decisions, it is up to the court to 'choose ye this day whom ye will serve'; and, in the duty of this decision, the court has the right to determine which doctrine best appeals to its sense of law, justice, and right.").

## LAW AND ANALYSIS

Plaintiffs argue that, in order for the UIM offer form to be "properly completed and executed by the named insured" pursuant to Section 38–77–350(B), the named insured not only must sign the offer form, but also must personally fill in the blanks to indicate the desired coverages and limits. Plaintiffs point to language in Section 38–77–350(A) requiring the offer form to contain "a space for the insured to mark" whether the insured wishes to accept or reject UIM and additional UM coverages, a "space for the insured to select" the coverage limits desired, and "a space for the insured to sign" the form to acknowledge the coverages have been offered to her. Plaintiffs further contend that imposing such a requirement would compel insurers to require the named insured read the form rather than simply signing a form prepared by an

---

2. We have redrafted the question to refine the issue before us.

insurance agent or his employee. This practice would better fulfill the Legislature's intent that a meaningful offer actually be made to the insured before an executed form is presumed to constitute such an offer.

Nationwide argues it is entitled to benefit from the statutory presumption that a meaningful offer is made when the named insured signs the form as required, regardless of whether an agent or his employee filled in the blanks to indicate the desired coverages and limits. Darla has not asserted the form was erroneously completed by the agent's employee, but has argued only that the manner in which it was completed is improper under the statute. Consequently, Nationwide contends the interpretation of the statute suggested by Plaintiffs would lead to an absurd result because the Legislature could not have intended to disallow the presumption of a meaningful offer in such circumstances.

The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the Legislature. *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in light of its manifest purpose. *Jackson v. Charleston County School Dist.*, 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994). A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. The real purpose and intent of the lawmakers will prevail over the literal import of particular words. *Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992).

The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist. *Cobb v. Benjamin*, 325 S.C. 573, 583, 482 S.E.2d 589, 594 (Ct.App.1997). The UIM and UM statutes are remedial in nature and enacted for the benefit of injured persons; therefore, they should be construed liberally to effect the purpose intended by the Legislature. *Cf. Gunnels v. American Liberty Ins. Co.*, 251 S.C. 242, 247, 161 S.E.2d 822, 824 (1968) (stating this principle with regard to UM coverage).

 Automobile insurance carriers are required to offer, at the option of the insured, UIM coverage up to the limits of the insured's liability coverage. S.C.Code Ann. § 38–77–160 (2002). The insurer bears the burden of establishing that it made a meaningful offer of UIM and additional UM coverages. *Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 348, 608 S.E.2d 569, 571 (2005); *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 405, 475 S.E.2d 758, 759 (1996). A noncomplying offer has the legal effect of no offer at all. *Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990). "If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." *Butler,* 323 S.C. at 405, 475 S.E.2d at 760.

 In order for an insurer to make a meaningful offer of UIM coverage, (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987). In response to *Wannamaker,* the Legislature enacted Section 38–77–350 to establish the requirements .for forms used in making offers of optional insurance coverage such as UIM. *Progressive Cas. Ins. Co.,* 362 S.C. at 349, 608 S.E.2d at 571–72.

Section 38–77–350 provides, in pertinent part:

(A) The director or his designee shall approve a form which automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at a minimum, must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage,

(2) a list of available limits and the range of premiums for the limits,

(3) a space *for the insured to mark* whether the insured chooses to accept or reject the coverage and a space *for the insured to select* the limits of coverage he desires,

(4) a space *for the insured to sign* the form which acknowledges that he has been offered the optional coverages,

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer. [Emphasis added.]

(B) If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

. . .

(D) Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and no person, including, but not limited to, an insurer and insurance agent is liable in an action for damages on account of the selection or rejection made by the named insured.

 An insurer enjoys a presumption it made a meaningful offer when a form is executed in compliance with this statute. *Progressive Cas. Ins. Co.,* 362 S.C. at 349, 608 S.E.2d at 571–72; Section 38–77–350(B). The insurer may not benefit from the protections of the statute when the form does not comply with the statute. *Progressive Cas. Ins. Co.,* 362 S.C. at 349, 608 S.E.2d at 572; *Osborne v. Allstate Ins. Co.,* 319 S.C. 479, 486, 462 S.E.2d 291, 295 (Ct.App.1995). Furthermore, a form does not necessarily constitute a meaningful offer simply because it was approved by the Department of Insurance. *Butler,* 323 S.C. at 408–409, 475 S.E.2d at 761. The purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage "is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their

needs." *Progressive Cas. Ins. Co.*, 362 S.C. at 352, 608 S.E.2d at 573.

■ We acknowledge that a competent person usually is presumed to have knowledge and understanding of a document he signs, absent evidence his signature was obtained by misrepresentation, fraud, forgery, or duress. *See Moye v. Wilson Motors, Inc.*, 254 S.C. 471, 479–80, 176 S.E.2d 147, 151–52 (1970) (automobile insurance contract); *Camden Inv. Co. v. Gibson*, 204 S.C. 513, 519, 30 S.E.2d 305, 307 (1944) (lease agreement); *Horton v. Atlantic Life Ins. Co.*, 187 S.C. 155, 197 S.E. 512 (1938) (life insurance contract); *Federal Land Bank of Columbia v. Summer*, 168 S.C. 510, 167 S.E. 830 (1933) (real property deed); *In re King's Will*, 132 S.C. 63, 128 S.E. 850 (1925) (testator's will). Plaintiffs in the present case have not asserted Darla's signature was improperly obtained. However, this fact is not dispositive in this case because of the plain and unambiguous language of Section 38–77–350, emphasized above in the quoted portions of the statute.

■ Accordingly, we answer "no" to the question certified by the district court. We conclude the Legislature intended, by the plain and unambiguous terms of the statute, for the *insured herself* to personally mark, select, and sign the UIM offer form pursuant to Section 38–77–350(A). The offer form is not "properly completed and executed by the named insured"—thus triggering the conclusive statutory presumption a meaningful offer was made pursuant to Section 38–77–350(B)—unless the insured herself personally marks, selects, and signs the form. In imposing these requirements, the Legislature apparently recognized that an insured person who is required to personally complete an offer form inevitably will find it necessary to seek further explanation from the insurance agent when he or she is unable to complete the form due to a lack of knowledge or understanding of the concepts of UM and UIM coverages. We agree with Plaintiffs that such a result is more likely to accomplish the important goal of adequately informing insured persons about coverage options, enabling them to make an informed decision of which type and amount of coverage will best suit their needs. *See Progressive Cas. Ins. Co.*, 362 S.C. at 352, 608 S.E.2d at 573.

▇ Our decision does not resolve the question of whether Insurer made a meaningful offer to Darla in this case. We simply conclude that Insurer, by allowing an agent or his employee to partially complete the offer form in a manner inconsistent with the plain terms of Section 38–77–350, is denied the benefit of the conclusive statutory presumption a meaningful offer was made. Such a case presents a factual issue for resolution by the factfinder, with the insurer bearing the burdens of proof and persuasion in demonstrating whether a meaningful offer was made to the insured pursuant to the *Wannamaker* analysis. *Progressive Cas. Ins. Co.,* 362 S.C. at 349, 608 S.E.2d at 572; *Osborne,* 319 S.C. at 486, 462 S.E.2d at 295.

## CONCLUSION

We conclude an offer form in which the blanks were filled in by an insurance agent or his employee in the presence of the named insured, and the form was then signed by the named insured, was not properly completed and executed pursuant to Section 38–77–350(B), such that the form may be conclusively presumed to constitute a meaningful offer of UIM coverage to the named insured.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice JOHN W. KITTREDGE, concur.