737 S.E.2d 869

**Greg COHEN and Stacy Cohen, Appellants,**

v.

**PROGRESSIVE NORTHERN INSURANCE COMPANY and Auto–Owners Insurance Company, Respondents.**

Appellate Case No. 2011–199408.

No. 5083.

Court of Appeals of South Carolina.

Heard Dec. 12, 2012.

Decided Feb. 13, 2013.

Daniel L. Draisen, Krause, Moorhead & Draisen, PA, of Anderson, for Appellants.

J.R. Murphy, Murphy & Grantland, PA, of Columbia, for Respondent Progressive Northern Insurance Company.

J. Victor McDade, Doyle, Tate & McDade, PA, of Anderson, for Respondent Auto–Owners Insurance Company.

FEW, C.J.

Greg and Stacy Cohen filed this action requesting reformation of a motorcycle insurance policy issued by Progressive Northern Insurance Company to include underinsured motorists (UIM) coverage. The trial court refused to reform the policy, finding Progressive made a meaningful offer of UIM coverage. We affirm.

## I. Facts and Procedural History

In 2005, Greg Cohen called Citizens Insurance Agency to purchase a policy for his motorcycle. He remembers speaking with a female employee about the policy but does not recall her name. Meredith Thomason, a Citizens Insurance agent, does not specifically recall speaking with Cohen but testified she wrote the quote sheet generated as a result of that call. She also signed the application form for Cohen's policy.

Thomason does not remember the transaction with Cohen. Therefore, her account of how Cohen applied for the policy is based on the procedure she typically follows for completing an application. She testified that a transaction begins with a phone call, and she fills out a quote sheet while talking with the client. She then creates an application form using input from the client, and prints it only after she and the client have

discussed and agreed upon what types and limits of coverage he wants. When the client comes to Citizens Insurance's office to complete the application, Thomason gives him an opportunity to read it. Going through each page of the application, she explains UIM coverage, tells the client he is not required by law to have it, and recommends the client buy UIM coverage with limits equal to the other types of coverage he is purchasing. She also reviews which coverage the client is selecting and which he is rejecting in the application form. The client signs the application in several places, including an acknowledgment stating he has read the information that Thomason presented to him regarding UIM coverage. Thomason then signs on a line indicating that the client has completed and signed the application. After that, she gives the client a copy. Thomason testified she never deviates from this procedure.

Cohen's recollection of applying for his policy differs from Thomason's procedure. He testified that when he called Citizens Insurance, he told the agent, "I want the same coverage that I have on my Expedition, my other vehicle." He does not recall talking on the phone about UIM coverage. The next day, he went to Citizens Insurance's office and spent less than five minutes signing paperwork. The employee with whom he met did not explain what was in the paperwork, and Cohen did not review the documents before signing them. They did not discuss what coverage limits he wanted or what would happen if he did not buy UIM coverage and was later injured. He testified he did not tell the employee that he did not want UIM coverage.

The application Cohen and Thomason signed includes an explanation of what UIM coverage is and how it works. Additionally, using language nearly identical to that endorsed by the supreme court in *Bower v. National General Insurance Co.*, 351 S.C. 112, 119–20, 569 S.E.2d 313, 317 (2002), the application explains that UIM coverage is optional and that it can be purchased up to the limits of the liability coverage Cohen was purchasing. Another page, entitled "Offer of underinsured motorist coverage," has a table listing four levels of UIM coverage limits and the increased premium Cohen would have to pay for each level. The highest of the four levels is equal to the limits of the liability and uninsured

motorist coverage Cohen requested in the application form. Below that table, the application asks, "Do you wish to purchase underinsured motorist coverage?" and provides blanks next to the words "Yes" and "No." A computer-generated "X" appears in the blank next to "No." Thomason selected that "X" when she generated the form on her computer. The next line of the application states, "If your answer is 'no' then you must sign here," and then provides a signature line. Cohen signed on that line. Below Cohen's signature, the application states, "If your answer is 'yes,' then specify the limits which you desire. These limits cannot exceed your motor vehicle insurance liability limits." The word "REJECTED" is typed below that instruction. Based on this application form, Progressive issued Cohen a policy that does not provide UIM coverage.

In 2007, Cohen was injured while riding his motorcycle. The Cohens filed this declaratory judgment action against Progressive and Auto–Owners Insurance Company. They asked that Progressive's policy be reformed to provide UIM coverage in the amount of the limits of the policy's liability coverage.[1]

Sitting nonjury, the trial court heard testimony from Cohen and Thomason and reviewed the application form. The court found Progressive made a meaningful offer of UIM coverage and Cohen rejected the offer. The Cohens filed a motion to reconsider, which the court denied.

## II. Whether the Trial Court Erred in Finding Progressive Made a Meaningful Offer of UIM Coverage

Automobile insurers are required to "offer ... underinsured motorist coverage up to the limits of the insured's liability coverage." S.C.Code Ann. § 38–77–160 (2002). Our supreme court has interpreted this language to require that "the insured ... be provided with adequate information ... to allow the insured to make an intelligent decision of whether to accept or reject the coverage." *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 521, 354 S.E.2d 555, 556

---

1. Auto–Owners issued a policy for the Expedition. The parties stipulated that if the court reformed Progressive's policy to provide UIM coverage, then Auto–Owners' policy would also provide UIM coverage.

(1987). In other words, "the insurer's offer of UIM coverage must be 'meaningful.' " *Atkins v. Horace Mann Ins. Co.,* 376 S.C. 625, 630, 658 S.E.2d 106, 109 (Ct.App.2008) (quoting *Tucker v. Allstate Ins. Co.,* 337 S.C. 128, 130, 522 S.E.2d 819, 820–21 (Ct.App.1999), which relied on *Wannamaker,* 291 S.C. at 521–22, 354 S.E.2d at 556–57). The *Wannamaker* court adopted a standard for "determin[ing] whether an insurer has complied with its duty to offer [UIM coverage]." 291 S.C. at 521, 354 S.E.2d at 556. The *Wannamaker* test requires the following:

> In general, for an insurer to make a meaningful offer of UIM coverage, (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 349, 608 S.E.2d 569, 571 (2005) (citing *Wannamaker,* 291 S.C. at 521, 354 S.E.2d at 556).

 "If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." *Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 261, 626 S.E.2d 6, 11 (2005) (citation and quotation marks omitted). "The insurer bears the burden of establishing that it made a meaningful offer." *Atkins,* 376 S.C. at 630, 658 S.E.2d at 109.

 The question of whether an insurer met its burden of proving it made a meaningful offer of UIM coverage is a question of fact. *See Floyd,* 367 S.C. at 264, 626 S.E.2d at 12 (stating "[s]uch a case presents a factual issue"). The trial court found Progressive met its burden of proving its offer satisfied each prong of the *Wannamaker* test and, therefore, that it complied with section 38–77–160. On appeal, our role is limited to determining whether evidence in the record reasonably supports the trial court's findings. *See Atkins,* 376 S.C. at 630, 658 S.E.2d at 109 (stating in a declaratory judgment action to determine whether an insurer made a meaningful

offer of UIM coverage, "the trial judge's factual findings will not be disturbed on appeal unless a review of the record reveals there is no evidence which reasonably supports the judge's findings").

█ The trial court based its factual finding that Progressive made a meaningful offer of UIM in compliance with section 38–77–160 on the basis of (1) Thomason's explanation of the coverage in her conversations with Cohen on the phone and in person, (2) the contents of the application form Progressive used to make the offer, and (3) the fact that Cohen signed the application's acknowledgment stating he read the explanation of UIM coverage. The court stated "the totality of the transaction with ... Thomason shows that Cohen was given a meaningful offer."

As to Thomason's personal explanation of UIM coverage, the court found she "not only orally presented the offer but also provided him with the written offer form," she "specified the limits of optional coverage up to Cohen's liability limits," she "intelligibly advised him of the nature of the optional coverages," and she "told him that the optional coverages were available for an additional premium." These findings were based on the trial court's credibility determination that Thomason followed "her general procedure," which she spelled out in great detail. The court found "Thomason's testimony shows that the *Wannamaker* requirements for a meaningful offer were met."

The trial court also based its factual findings on the contents of the form Progressive used to make the offer. The court specifically found "the offer form fully satisfied the five requirements of § 38–77–350(A)" and "it also satisfied the four-element *Wannamaker* test." We agree with the trial court that the form, which was prescribed by the South Carolina Department of Insurance and includes language nearly identical to that endorsed by the supreme court in *Bower*, contained all of the information required under subsection 38–77–350(A) and *Wannamaker*. Based on Thomason's personal explanation and on the content of the form, the court found "the notification process [was] commercially reasonable."

Finally, the trial court found that by signing the form, Cohen was deemed to understand its contents. Cohen signed the form in three places, including a page in which he acknowledged that he either read, or had someone read to him, the form's explanation of UIM coverage and its offer of that coverage. *See Floyd,* 367 S.C. at 263, 626 S.E.2d at 12 (stating "a competent person usually is presumed to have knowledge and understanding of a document he signs, absent evidence his signature was obtained by misrepresentation, fraud, forgery, or duress").

We find the evidence described above reasonably supports the trial court's finding that Progressive proved it met the *Wannamaker* test and therefore made a meaningful offer in compliance with section 38–77–160.

### III. The Significance of the Form Not Being "Properly Completed" under Subsection 38–77–350(B)

▇ Subsection 38–77–350(B) of the South Carolina Code (2002) provides that if the application form required by subsection 38–77–350(A) is "properly completed and executed by the named insured it is conclusively presumed that [the offer complied with section 38–77–160]." Progressive concedes the form was not "properly completed" because Cohen did not personally make all the required marks on it and, therefore, Progressive does not get the presumption. *See Floyd,* 367 S.C. at 262, 626 S.E.2d at 11 ("An insurer enjoys a presumption it made a meaningful offer when a form is executed in compliance with [section 38–77–350]. The insurer may not benefit from the [presumption] when the form does not comply with the statute." (citations omitted)). Thus, there is no reason to further consider the terms or requirements of subsection 38–77–350(B).

The Cohens argue, however, that because the form was not "properly completed" in compliance with subsection 38–77–350(B), it is not a meaningful offer under section 38–77–160 and *Wannamaker.* The argument is based on a misunderstanding of a statement the supreme court made in *Hanover Insurance Co. v. Horace Mann Insurance Co.,* 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990), and repeated in other cases including *Floyd,* 367 S.C. at 261, 626 S.E.2d at 11—"a noncom-

plying offer has the legal effect of no offer at all." The Cohens' argument confuses the requirement that the subsection 38–77–350(A) form be "properly completed" to get the subsection 38–77–350(B) presumption with the requirement that an offer must be "meaningful" to comply with section 38–77–160. In essence, the Cohens argue that an offer form must be "properly completed" under subsection 38–77–350(B) or it is "no offer at all." We disagree.

In *Hanover*, the insurer's compliance with section 38–77–350 was not an issue.[2] Rather, the supreme court addressed only the requirement of a meaningful offer under section 38–77–160. In *Floyd*, the court made the statement in its general discussion of the requirement of a meaningful offer to comply with section 38–77–160.[3] In both cases, therefore, the court used the phrase "noncomplying offer" to refer to the requirement of a meaningful offer and compliance with section 38–77–160. The court was not referring in either *Hanover* or *Floyd*, or in any of the other opinions in which it has used the phrase,[4] to the subsection 38–77–350(B) requirement of "properly completing" the subsection 38–77–350(A) form. The supreme court has recently recognized, at least implicitly, that noncompliance with subsection 38–77–350(B) does not mean there was no meaningful offer:

It is important to note "[f]ailure to comply with section 38–77–350(A) does not automatically require judicial reformation of a policy. Rather, even where an insurer is not

2. In fact, subsection 38–77–350(B) did not apply in *Hanover* because the effective date of the subsection occurred after the events that gave rise to the lawsuit. *Compare* 1989 S.C. Acts 513 (stating section 38–77–350 "takes effect July 1, 1989") *and* 1989 S.C. Acts 461 (stating the "form must be used by insurers for all new applicants after December 1, 1989") *with Hanover*, 301 S.C. at 55, 389 S.E.2d at 657 (stating the appeal was heard January 9, 1990).

3. The supreme court did discuss subsection 38–77–350(B) later in *Floyd*, but it was a separate discussion about the insurer's entitlement to the presumption available in that section, not about compliance with the *Wannamaker* test or section 38–77–160.

4. *See Ray v. Austin*, 388 S.C. 605, 611, 698 S.E.2d 208, 212 (2010); *Croft v. Old Republic Ins. Co.*, 365 S.C. 402, 418, 618 S.E.2d 909, 917 (2005); *Progressive Cas. Ins. Co.*, 362 S.C. at 348–49, 608 S.E.2d at 571; *Bower*, 351 S.C. at 116, 569 S.E.2d at 315; *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 759 (1996).

entitled to the presumption [in section 37–77–350(B) ] that it made a meaningful offer, it may prove the sufficiency of its offer by showing that it complied with *Wannamaker*."

*Wiegand v. U.S. Auto. Ass'n,* 391 S.C. 159, 164, 705 S.E.2d 432, 435 (2011) (quoting *Grinnell Corp. v. Wood,* 389 S.C. 350, 357, 698 S.E.2d 796, 799–800 (2010)).

■ We now expressly recognize it,[5] and hold that an insurer's noncompliance with subsection 38–77–350(B) does not render the use of the subsection 38–77–350(A) form a "noncomplying offer." Rather, the phrase "noncomplying offer," as used in *Hanover, Floyd,* and other cases, refers to an offer that is not meaningful under *Wannamaker.* Therefore, the insurer's inability to get the conclusive presumption under subsection 38–77–350(B) does not mean the insurer did not make a meaningful offer in compliance with section 38–77–160. Rather, it simply means the trial court must make the factual determination of whether the insurer made a meaningful offer. The trial court made that factual determination here.

Our holding is consistent with, if not mandated by, *Floyd.* In that case, the supreme court answered "no" to this specific question: "Is an offer form in which the blanks were filled in by an insurance agent . . . , and the form was then signed by the named insured, properly completed and executed pursuant to [subsection] 38–77–350(B) . . . ?" 367 S.C. at 258–59, 263, 626 S.E.2d at 9–10, 12. The court held, therefore, the insurer was "denied the benefit of the conclusive statutory presumption a meaningful offer was made." 367 S.C. at 264, 626 S.E.2d at 12. The court then stated, "Such a case presents a factual issue[,] . . . whether a meaningful offer was made to the insured pursuant to the *Wannamaker* analysis." *Id.* The result of *Floyd* is that after a determination that the insurer was not entitled to the conclusive presumption under subsec-

---

5. We say *Wiegand* "implicitly" recognized what we now hold because the issue there was different, and thus the case is distinguishable. In *Wiegand,* the court dealt with the sufficiency of the form, and not exclusively with the manner of its completion by the insured, see *391 S.C. at 164'65, 705 S.E.2d at 435,* and the court's holding was that the insurer did get the conclusive presumption. Further, the quoted comment specifically mentions "failure to comply with [sub] *section 38'77'350(A),*" *391 S.C. at 164, 705 S.E.2d at 435,* while the issue in this case is the significance of noncompliance with subsection 38'77'350(B).

tion 38–77–350(B) because the insurance agent filled in the form, the case was returned to the district court for a factual determination of whether the insurer made a meaningful offer of UIM. 367 S.C. at 256, 263–64, 626 S.E.2d at 8, 12 (stating the supreme court answered the question on certification from the district court, leaving "a factual issue for resolution by the factfinder"). This precise scenario exists in this case—after a determination that the insurer was not entitled to the presumption because the insurance agent filled in the form, the trial court made the factual determination of whether the insurer made a meaningful offer under *Wannamaker* and section 38–77–160.

We do not address the parties' remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when resolution of another issue disposes of the appeal).

## IV. Conclusion

The judgment of the trial court is **AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.