**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jamar Markel Bronner, Appellant,

v.

GEICO Indemnity Company, Respondent.

Appellate Case No. 2019-001096

———————————

Appeal from Beaufort County
Marvin H. Dukes, III, Acting Circuit Court Judge

———————————

Unpublished Opinion No. 2022-UP-348
Heard May 24, 2022 – Filed August 31, 2022

———————————

**AFFIRMED**

———————————

J. Olin McDougall, II, of McDougall Law Firm, LLC of
Beaufort, and Bert Glenn Utsey, III, of Clawson Fargnoli
Utsey, LLC, of Charleston, for Appellant.

Thomas H. Milligan, of Milligan & Herns PC, of Mt.
Pleasant, for Respondent.

———————————

**PER CURIAM:** In this declaratory judgment action, Appellant Jamar Markel
Bronner (Bronner) appeals a grant of summary judgment to GEICO Indemnity

Company (GEICO) on his efforts to have his policy reformed to include underinsured motorist (UIM) coverage.  We affirm.

After being injured in a motorcycle accident and exhausting the coverage of an at-fault driver, Bronner attempted to claim underinsured coverage through his own policy with GEICO.  The company denied coverage, arguing Bronner had rejected an offer of UIM coverage when he first obtained motorcycle insurance.[1]

On April 9, 2015, Bronner purchased a GEICO policy providing insurance on a 2009 Harley Street Glide.  At the time, he spoke with GEICO agent Steven Stewart (Stewart) over the telephone.

Bronner and Stewart both have difficulty remembering the April 9, 2015 phone call, and disagree on what they do remember.  Bronner explained at a deposition that he "d[id]n't recall much."  However, he suggested that he did not believe he was given an adequate description of UIM coverage:  "I don't believe it wasn't mandatory or rejection.  Probably just told me the policies.  I don't remember nobody saying nothing about is this mandatory or you can reject this."  Bronner also stated at times that UIM was never explained to him and that he "would rather have it."  Bronner indicated he would have paid as much as $780 in premiums for UIM "[i]f I'd known about it what I know now, if it was properly explained to me."

During his deposition, Stewart said he did not recall the conversation.  However, referring to the company's records of the phone transaction, Stewart said he would have discussed UIM coverage with Bronner.  Stewart maintained: "I knew that he wanted to reject the coverages, and we had that conversation around what it would cost with and without."

A packet of information about the policy, including a form allowing Bronner to memorialize his rejection of UIM coverage, was mailed to Bronner.  By May 1, GEICO had not received Bronner's form.  The company sent another copy of the form and called Bronner.  Apparently after calling GEICO back, Bronner returned the form indicating his rejection of the coverage.[2]  The form included a short summary explaining the nature of underinsured motorist coverage, the insured individual's opportunity to decline the coverage, and what the insured may collect if

---

[1] The preceding paragraphs are taken from the complaint, interrogatories, and the circuit court's decision.  The claim and its rejection are not included in the record.

[2] The contents of the second call are not revealed in the record.  However, based on testimony submitted in this case, it is at best questionable that Bronner received any additional information about UIM coverage at that time.

the policy is triggered.  Additionally, the form listed potential UIM coverages, including offering $25,000/$50,000/$25,000 coverage for between $23.00 and $780.00.[3]

In 2016, Bronner purchased a newer motorcycle.  He appears to have been confused about whether the policy on his old motorcycle was being canceled, to be replaced with a new policy on his newer bike.  However, the policy numbers are the same.[4]

On June 24, 2016, another driver's vehicle collided with Bronner while he riding on his motorcycle.  Bronner's medical bills amounted to more than $100,000.  In February 2017, Bronner filed a complaint in Beaufort County, noting that he had recovered only $25,000 from the other driver's insurance policy and arguing that "GEICO failed to make a meaningful offer of UIM coverage under the Policy."  The complaint asked for the policy to be reformed to provide for $25,000 in coverage.[5]  GEICO answered in the U.S. District Court in an effort to remove the matter from state court.  Following a stipulation by Bronner "that the amount in controversy is less than $75,000," the matter was returned to state court.

The two parties made cross-motions for summary judgment.  The circuit court held a hearing on October 31, 2018.  In January, the circuit court found for GEICO.  The court held:  "There is no genuine issue as to any material fact that . . .  Bronner rejected UIM coverage after receiving a meaningful offer in compliance with S.C. Code Ann. § 38-77-350(A) and *Wannamaker*."[6]  Bronner filed a Rule 59(e) motion, arguing that the court erred in its interpretation of the meaningful offer standard and that there remained "genuine issues of material fact as to whether GEICO complied with the requirements of" *Wannamaker*.  The circuit court denied the motion in a Form 4 order.  This appeal follows.

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court . . . ." *Traynum v. Scavens*, 416 S.C. 197, 201, 786 S.E.2d 115, 117 (2016) (alteration in original) (quoting *Quail Hill, L.L.C.*

---

[3] The Bodily Injury Liability coverage on Bronner's policy was $25,000/$50,000.

[4] *See* S.C. Code Ann. § 38-77-350(C) (2015) ("An automobile insurer is not required to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supersedes, or replaces an existing policy.").

[5] The UIM limits of the reformed policy would have been $25,000/$50,000; as a result, Bronner would have received $25,000.

[6] *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 SC. 518, 354 S.E.2d 555 (1987).

*v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010)). Summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When the purpose of the underlying dispute [in a declaratory judgment action] is to determine whether coverage exists under an insurance policy, the action is one at law." *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 610, 730 S.E.2d 862, 864 (2012) (quoting *Crossmann Cmtys. Of N.C., Inc., v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011)).

Uninsured and underinsured motorist coverage is governed by both statutory and common law in South Carolina. First, statutory law dictates that all automobile insurers "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute." S.C. Code Ann. § 38-77-160 (2015). Under section 38-77-350 of the South Carolina Code (2015), an insurer that commits the offer to a form approved by the state benefits from a statutory presumption that the insured's selection or rejection of coverage was informed "[i]f this form is signed by the named insured[] after it has been completed by an insurance producer or a representative of the insurer." S.C. Code Ann. § 38-77-350(B).

In 1987, our supreme court considered the predecessor to the current version of the statute in *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987). There, the court held that section 38-77-160 "mandates the insured to be provided with adequate information, and in such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage." *Id.* at 521, 354 S.E.2d at 556. To ensure this, the court laid out what is now known as the *Wannamaker* test:

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Id.* Bronner argues that GEICO's offer was not a meaningful offer under South Carolina law. We disagree.[7]

Bronner relies on a synthesis of *Wannamaker* and the statutory presumption language—including section 38-77-350(B)—to argue that GEICO's offer was not meaningful. This approach lacks support in our state's law. The standards for the presumption are not folded into an overarching analysis of the meaningful offer; they are intended to provide an alternative to fully litigating the case. *See Traynum*, 416 S.C. at 203, 786 S.E.2d at 118 ("Our precedents thus recognize that an insurer can establish it made a meaningful offer of UIM coverage by proving *either* it is entitled to the conclusive presumption of section 38-77-350(B) or it satisfied the requirements of *Wannamaker*."); *Cohen v. Progressive Northern Ins. Co.*, 402 S.C. 66, 76, 737 S.E.2d 869, 874 (Ct. App. 2013) ("[A]n insurer's noncompliance with subsection 38-77-350(B) does not render the use of the subsection 38-77-350(A) form a 'noncomplying offer.'").

Nonetheless, Bronner attempts to reconcile his approach and our precedents by relying on *Grinnell Corp. v. Wood* to argue that "an insurer cannot satisfy its burden of proof by relying solely upon an offer form that fails to satisfy [s]ection 38-77-350." *See Grinnell Corp. v. Wood*, 389 S.C. 350, 358, 698 S.E.2d 796, 800 (2010) ("If the only evidence presented in this record were the statutorily deficient and incorrectly executed offer form, the court of appeals opinion would have to be affirmed."). In this case, Bronner argues, the only additional evidence of a conversation between GEICO and Bronner is the disputed phone call between the two men; because the contents of the phone call are not agreed upon, summary judgment is inappropriate.

This is misguided. As demonstrated in Bronner's own brief, this court noted in its own consideration of *Grinnell Corp.* that "[i]t is axiomatic that a form which *fails under the requirements of section 38-77-350(A)* would not meet the

---

[7] Bronner also urges this court to reverse the circuit court on the grounds that GEICO is not entitled to the presumption, found in section 38-77-350, that an offer was knowingly accepted or declined. Because the offer provided by GEICO satisfies the *Wannamaker* test, GEICO need not rely on the presumption provided by section 38-77-350. Therefore, we decline to rule on this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the "appellate court need not address remaining issues when disposition of prior issue is dispositive" (citing *Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993))).

requirements of *Wannamaker* without evidence outside of the offer form." *Grinnell Corp. v. Wood*, 378 S.C. 458, 472–73, 663 S.E.2d 61, 68 (Ct. App. 2008) (emphasis added).

Bronner's argument on the statutory presumption, though, is largely confined to whether the requirements *of subsection 38-77-350(B)* were followed by GEICO. Those requirements guide courts' consideration of the presumption, not the meaningfulness of the offer itself.[8] *See Cohen*, 402 S.C. at 76, 737 S.E.2d at 874 ("[A]n insurer's noncompliance with subsection 38-77-350(B) does not render the use of the subsection 38-77-350(A) form a 'noncomplying offer.'").

To the extent Bronner does attempt to argue that GEICO's offer was not meaningful under subsection 38-77-350(A) and *Wannamaker*, those efforts are unavailing. As to the second and third prongs of *Wannamaker*, the form advised Bronner of the nature of UIM insurance and the limitations on that coverage.

On the first prong—the commercial reasonableness of the offer—Bronner relies largely on this court's reference in *Dewart v. State Farm Mut. Auto. Ins. Co.* to the potential for a disclosure about coverage to be mistaken for "junk mail." 296 S.C. 150, 154–55, 370 S.E.2d 915, 917–18 (Ct. App. 1988). However, this court's ruling was not as sweeping as Bronner suggests. Instead, this court said

> In order for [the insurer's] insert not to be ignored as such 'junk mail,' it was incumbent upon the company . . . to include something on the renewal notice alerting the insured to read the insert. Placing critical information in two documents, without directing the insured to read both, was not a method reasonably calculated to draw the insured's attention to the nature of the offer.

*Id.* at 155, 370 S.E.2d at 917–18.

As our supreme court has noted, the *Dewart* court "held that when critical information is contained in separate documents enclosed in the same mailing, one must alert attention to the other. Otherwise, the insurer would fail to inform the

---

[8] This court did note in its decision in *Grinnell Corp.* that "the form required signatures next to the boxes where the insured elects not to choose optional coverage, but no one signed those blanks." *Id.* at 474, 663 S.E.2d at 69. However, the court appeared to rely largely on other problems with the form in that case. *See id.* at 473–74, 663 S.E.2d at 69.

insured of the importance of additional inserts, which could be dismissed as 'junk mail.'" *Lopez v. Nat'l Gen. Ins. Co.*, 308 S.C. 342, 346, 417 S.E.2d 864, 867 (1992). *See also Jackson v. State Farm Mut. Auto. Ins. Co.*, 303 S.C. 321, 324–25, 400 S.E.2d 492, 493 (1991) ("The *Dewart* court reasoned that placing critical information in two documents, without including anything on the premium renewal notice alerting the insured to read the insert, was not a method reasonably calculated to draw the insured's attention to the nature of the offer."); *id.* at 325, 400 S.E.2d at 494 ("[T]he premium notices here are distinguishable from the notice sent in *Dewart*, as they each contained a statement instructing the insured to refer to the insert for a further explanation of underinsured and uninsured motor vehicle coverage."). In the present case, all of the information was on the same form, and so these cases are inapposite.

As to the final prong, dealing with premiums, Bronner argues that the broad range of premiums on the form were not a reasonable warning of the potential size of an increase if Bronner wanted to go through with UIM coverage. However, the statute requires just "a list of available limits and the range of premiums for the limits[.]" S.C. Code Ann. § 38-77-350(A)(2) (2015). We do not read the statute to require a precise dollar amount.

Based on the foregoing, we find that GEICO made a meaningful offer of uninsured coverage to Bronner.

**AFFIRMED.**

**GEATHERS and HILL, JJ., and LOCKEMY, A.J., concur.**