608 S.E.2d 569

PROGRESSIVE CASUALTY INSURANCE
COMPANY, Plaintiff,

v.

Louis LEACHMAN, Defendant.

No. 25919.

Supreme Court of South Carolina.

Heard Sept. 22, 2004.
Decided Jan. 10, 2005.

J.R. Murphy and Adam J. Neil, both of Murphy & Grantland, of Columbia, for plaintiff.

James B. Richardson, Jr., of Richardson & Birdsong, of Columbia; and Jay T. Gouldon, of Stoney, Gouldon & Roddey, of Charleston, for defendant.

Darra W. Cothran and Edward M. Woodward, both of Woodward, Cothran & Herndon, of Columbia; and Richard Hodyl, Jr., Thomas J. Pontikis, and Michael J. Borree, all of Williams, Montgomery & John, of Chicago, IL, for amicus curiae Property Casualty Insurers Association of America.

Chief Justice TOAL:

The Honorable David C. Norton of the United States District Court, District of South Carolina, certified questions to this Court asking whether an insurer made a meaningful offer of under insured motorist coverage ("UIM").

### Factual / Procedural Background

In April 2001, Louis Leachman ("Leachman") purchased an automobile insurance policy from Progressive Casualty Insurance Company ("Progressive"). Leachman purchased a $300,000 combined single limits liability policy. Leachman selected UIM coverage by marking a line designated $100,000 / $300,000 / $50,000 on the offer form. He also signed the form at the bottom, noting that the UIM coverage was lower than his liability coverage ($300,000). After Leachman signed an acknowledgement of his selection, Progressive issued Leachman the policy.

Available amounts of UIM coverage were described on the first page of Progressive's form.

Available limits of UM and/or UIM are (for "each person" / "each accident" / "property damage each accident"):
$15,000/$30,000/$10,000
$15,000/$30,000/$15,000
$25,000/$50,000/$10,000

$25,000/$50,000/$15,000

$25,000/$50,000/$25,000

$50,000/$100,000/$25,000

$50,000/$100,000/$50,000

$100,000/$300,000/$50,000

250,000/$500,000/$100,000

$100,000 Combined Single Limit (each accident)

$300,000 Combined Single Limit (each accident)

$500,000 Combined Single Limit (each accident)

The form also explained that increased coverage was available:

> For a modest increase in premium, the higher limits of UM and/or UIM are available up to the limits of your bodily injury Liability Coverage. Our representative can quote premium prices for you.

The form also had a page for insureds to select the amount of coverage they desired. Leachman selected the following:

____ $15,000/$30,000/$10,000-premium = $8.00

____ $15,000/$30,000/$15,000-premium = $8.00

____ $25,000/$50,000/$10,000-premium = $9.00

____ $25,000/$50,000/$15,000-premium = $9.00

____ $25,000/$50,000/$25,000-premium = $9.00

____ $50,000/$100,000/$25,000-premium = $11.00

____ $50,000/$100,000/$50,000-premium = $11.00

_X_ $100,000/$300,000/$50,000-premium = $13.00 [1]

____ $250,000/$500,000/$100,000

____ $100,000 Combined Single Limit (each accident)-premium = $12.00

____ $300,000 Combined Single Limit (each accident)-premium = $15.00

____ $500,000 Combined Single Limit (each accident)

Finally, the form allowed the insureds to acknowledge that they had selected or rejected UIM coverage. Leachman marked the following:

> _x_ I have been offered and I have rejected the option to purchase Underinsured Motorist Coverage in the amount

---

1. The "x" indicates the amount of coverage selected by Leachman.

equal to my limits of Liability Coverage. Instead, as shown above, I either: (1) elect lower limits of Underinsured Motorist Coverage or (2) reject the option to purchase any Undersinsured Motorist Coverage.

In June 2002, while taking a walk, Leachman was hit by a car and was seriously injured. Leachman claimed that the damages from the accident exceeded the driver's automobile liability coverage limit, which was $15,000. Leachman made a claim for UIM coverage, and Progressive tendered $100,000. Leachman also sought additional coverage up to the amount of his liability coverage ($300,000).

Progressive filed a declaratory judgment action in the United States District Court, District of South Carolina asking the Court, to determine the amount of UIM coverage provided under the policy. The Honorable David C. Norton of the United States District Court, District of South Carolina, has certified the following questions to this Court:

I. In attempting to make an insured a "meaningful offer" of UIM coverage, is it sufficient for an insurer to offer all of the options of UIM coverage that the insurer is authorized to sell, up to the limits of the insured's liability policy, or must an insurer provide a blank line, or some equivalent, that allows the insured to select any increment of UIM coverage up to the insured's liability limits?

II. Does the form used in this case constitute a meaningful offer?

### LAW / ANALYSIS

We will address the second certified question first.

Leachman argues Progressive failed to make a meaningful offer of UIM coverage, and the policy should be reformed to include UIM coverage equal to the amount of liability coverage of $300,000. We disagree.

▮▮▮▮ The insurer bears the burden of establishing that it made a meaningful offer. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 759 (1996). A noncomplying offer has the legal effect of no offer at all. *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 57, 389 S.E.2d 657, 659

(1990). "If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." *Butler*, 323 S.C. at 405, 475 S.E.2d at 760.

In general, for an insurer to make a meaningful offer of UIM coverage, (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987).

In response to *Wannamaker*, the legislature passed a statute establishing the requirements for forms used in making offers of optional insurance coverage such as UIM. The statute directs the insurer to include the following in its offer:

(1) a brief, concise explanation of the coverage;

(2) a list of available limits and the range of premiums for the limits;

(3) space for the insured to mark whether the insured chooses to accept or reject the coverage, and a space to select the limits of coverage desired;

(4) a space for the insured to sign the form, acknowledging that the optional coverage has been offered; and

(5) the mailing address and telephone number of the Department, so that the insured may contact it with any questions that the insurance agent is unable to answer.

S.C.Code Ann. § 38–77–350(A) (2002).

An insurer enjoys a presumption that it made a meaningful offer if it executes a form that complies with this statute. S.C.Code Ann. § 38–77–350(B) (2003); *Antley v. Nobel Ins. Co.*, 350 S.C. 621, 632, 567 S.E.2d 872, 878 (Ct.App. 2002). If the form does not comply with the statute, the insurer may not benefit from the protections of the statute. *Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 486, 462 S.E.2d 291, 295 (Ct.App.1995). Furthermore, a form does not necessarily

constitute a meaningful offer simply because it was approved by the Department of Insurance. *Butler*, 323 S.C. at 408–409, 475 S.E.2d at 761.

This Court recently addressed the issue of whether an insurer made a meaningful offer of UIM to an insured. *Bower v. Nat'l Gen. Ins. Co.*, 351 S.C. 112, 569 S.E.2d 313 (2002). In *Bower*, this Court held that when the insurer failed to inform the insured that UIM coverage was available *in any amount up to the insured's liability coverage*, a meaningful offer was not made. *Id.* at 119, 569 S.E.2d at 316 (citing *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984)) (emphasis added). The form at issue in *Bower* listed four choices for UIM coverage amounts. Three of the choices included coverage up to the limits of the insured's liability coverage.[2] Other amounts of coverage were not available on the form. The form did, however, provide a blank line, which allowed the insured to write in any amount of coverage the insured desired. Bower rejected UIM coverage altogether. This Court held the form did not constitute a meaningful offer, and therefore had the legal effect of being no offer at all. *Id.* As a result, the insurance policy was reformed to include UIM up to the liability limits. *Id.*

In another case, the court of appeals held that no meaningful offer was made when the insurer listed only three choices for UIM coverage. *Wilkes v. Freeman*, 334 S.C. 206, 512 S.E.2d 530 (Ct.App.1999). *Wilkes* also involved an insured who rejected UIM coverage altogether. After suffering injuries, the insured wanted UIM coverage up to the amount of his policy limits, arguing he did not receive a meaningful offer. The court held that no meaningful offer was made, and the policy was reformed to include coverage for the insured in the amount of liability coverage. *Id.*

 The facts in the present case are distinguishable from *Bower* and *Wilkes*. Unlike the insureds in *Bower* and *Wilkes*, the insured in the present case purchased UIM coverage. Moreover, Progressive's form, titled "UIM selection form," allowed Leachman to choose from eleven different amounts of UIM coverage up to the amount of liability coverage, including

---

**2.** The fourth choice exceeded Bower's liability limits, and therefore he was not permitted to select it.

$300,000.[3] Because this offer gave the insured the opportunity to make an intelligent and informed decision on whether to purchase UIM coverage, we hold that Progressive made a meaningful offer.

There are also policy reasons for finding that Progressive made a meaningful offer. The goal, as set forth in *Wannamaker*, is to provide an insured with adequate information to make an intelligent decision on whether to accept or reject UIM coverage. 291 S.C. at 521, 354 S.E.2d at 556. In addition, a meaningful offer allows an applicant to purchase UIM insurance in any amount up to the limits of liability at an additional premium. *Bower*, 351 S.C. at 117, 569 S.E.2d at 315. To conclude that Progressive did not make a meaningful offer in this case would lead to an absurd result. If this Court applies the rationale of *Bower* and *Wilkes*, Progressive would be required to pay an amount that Leachman specifically rejected. To compel coverage would overstep the purpose behind mandating a meaningful offer.

In addition, these public policies behind mandating a meaningful offer would be undermined if the insurer were forced to provide full coverage when it failed to offer *every conceivable combination* of coverage up to an insured's liability limits. *See Wilkes*, 334 S.C. at 211–212, 512 S.E.2d at 533 (insurer is not required to offer every possible coverage limit combination and merely listing several available options without providing a clear description that the applicant may request other limits is not a meaningful offer). In other words, the policy behind requiring a meaningful offer is promoted without creating a rule that places such an unfair burden on insurers.

■ As to the first certified question, we hold that it is sufficient for an insurer to offer all of the coverage amounts the insurer is authorized to sell by the Department of Insurance,[4] without providing a blank line for insureds to write in any amount of coverage up to the policy limit.

---

3. The form also had two other options: a twelfth level of coverage, which was above the insureds liability limits, and an option to select no UIM whatsoever.

4. South Carolina statutory law provides that "no insurer may make or issue a policy except in accordance with its filings with the Department

The controlling statute does not require insurers to provide a blank line. *See* S.C.Code Ann. § 38–77–350(A) (requiring insurers to provide a list of available limits, a space for the insured to mark whether the insured chooses to accept or reject the coverage, and a space to select the limits of coverage desired). Moreover, a blank line maybe helpful but it is not necessary. *Bower*, 351 S.C. at 121–122, 569 S.E.2d at 317–318 (Toal, C.J., dissenting). Further, an offer is not necessarily meaningful when a blank space is provided for the insured to write in the desired amount of coverage. *Id.* at 119, 569 S.E.2d at 316. If the legislature had intended for insurers to provide a blank line allowing insureds to choose any amount of coverage, the blank-line mandate would have been included in the statute.

Therefore, we hold that when an insurer offers all amounts of coverage authorized by the Department of Insurance, insurers have provided insureds with the opportunity to make an intelligent decision as to whether to accept or reject UIM coverage.

### CONCLUSION

The holding in *Bower* should not be extended to require the insurer to offer every possible numerical combination of coverage for UIM. Instead, the goal is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs. Accordingly, the Court finds that Progressive made a meaningful offer, and therefore the second question is answered in the affirmative. As to the first question, it is sufficient, in making a meaningful offer, for an insurer to offer an insured all of the coverage amounts that the insurer is authorized to sell by the Department of Insurance.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

as to approved premium amounts." S.C.Code Ann. § 38–73–920 (2003).