698 S.E.2d 796

GRINNELL CORPORATION d/b/a Grinnell
Fire Protection, Petitioner,

v.

John WOOD, Respondent,

and

American Home Assurance Company, Petitioner,

and

Government Employees Insurance Company, Respondent.

No. 26869.

Supreme Court of South Carolina.

Heard Feb. 18, 2010.
Decided Aug. 16, 2010.

352

Amy M. Snyder, of Clarkson, Walsh, Terrell, and Coulter, PA, of Greenville; Charles C. Eblen, of Shook, Hardy and Bacon, LLP, of Kansas City, MO; Peter H. Dworjanyn, Christian Stegmaier, and Amy L. Neuschafer, all of Collins & Lacy, PC, of Columbia, for Petitioners.

David Wesley Whittington, of Knight Law Firm, LLC, of Summerville; Stephen F. DeAntonio, of DeAntonio Law Firm, LLC, of Charleston, for Respondents.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

Chief Justice TOAL.

In this case, the Court granted a writ of certiorari to review the court of appeals' opinion affirming the trial court's grant of summary judgment in favor of Respondents John Wood (Wood) and Government Employees Insurance Company (GEICO).

### FACTS/PROCEDURAL BACKGROUND

On May 1, 2000, Wood was injured in an automobile accident during the course and scope of his employment with Appellant Grinnell Corporation d/b/a Grinnell Fire Protection (Grinnell). Grinnell is a wholly owned subsidiary of Tyco International, Inc. (Tyco). At the time of the accident, Wood was operating a vehicle owned by Grinnell and insured by its carrier, American Home Assurance Company (American

Home). Wood successfully brought a claim against Grinnell for workers' compensation coverage.

Wood has also sought UM and UIM coverage in the civil law suit of *John Wood v. Lisa Ackerman and John Doe*, 2003-CP-08-615. In that action, which is currently pending, Wood served both American Home and GEICO, his personal automobile insurance carrier. Grinnell filed this declaratory judgment action against Wood, GEICO, and American Home seeking a declaration that it had successfully rejected additional UM and UIM coverage under its policy with American Home. GEICO answered and filed a counterclaim against Grinnell and a cross-claim against American Home, asking for a reformation of Grinnell's policy to include additional UM and UIM coverage. Wood answered and filed a cross-claim against American Home seeking a reformation of the policy and damages for bad faith.

After discovery, Grinnell, GEICO, and Wood filed motions for summary judgment on the issues concerning the offer of UM and UIM and reformation of the policy. American Home joined Grinnell in its motion. The trial court granted summary judgment to Wood and GEICO finding that American Home failed to make a meaningful offer of UM and UIM to Grinnell. Thus, the trial court ordered the reformation of the policy to include additional UM and UIM coverage. The court of appeals affirmed the trial court's decision. *See Grinnell Corp. v. Wood,* 378 S.C. 458, 663 S.E.2d 61 (Ct.App.2008).

We now turn to the facts surrounding the offer of additional UM and UIM coverage to Grinnell. Gerald M. Goetz (Goetz), in his capacity as Vice President of Risk Management for Tyco and its subsidiaries, procured the policy of insurance at issue in this matter. It is undisputed that Goetz was well educated and experienced in the areas of insurance and risk management. Goetz has a bachelor's degree from Seton Hall University, an associates degree in Risk Management from The Insurance Institute, and has taken graduate courses at the College of Insurance. He has worked in risk management for Tyco since 1978. The procurement of automobile policies for the company and its subsidiaries has been part of his job description since he began employment with Tyco. Moreover, Goetz's duties with Tyco include the procurement of all its

global insurance policies and overseeing the risk management programs for the company. Goetz estimates that at the time he procured the policy at issue he procured twenty-two policies of insurance annually.

Goetz considers himself to be a sophisticated purchaser with regard to insurance policies. Further, he believes his educational and professional experience gave him a clear understanding of the liability coverage he intended to acquire for Grinnell.

Concerning the process of procuring the policy at issue, Tyco had been insured by AIG member companies, such as American Home, for some time. Goetz met with Tyco's broker to discuss renewal of its policy. Further, after the renewal meeting, Goetz oversaw Tyco's risk management department as it gathered exposure data and turned it over to the insurer to be used in the renewal process. Goetz testified that at the renewal meetings he specifically discussed Tyco's desire to limit optional UM and UIM coverage within the policies across all states.

At the time of the execution of the policy at issue, Goetz was fully aware of the options related to UM and UIM coverage. Goetz understood that in South Carolina he could purchase UM and UIM coverage up to liability limits. However, Goetz intended to decline optional UM and UIM coverage as part of his risk management strategy for Tyco. Goetz did not want optional UM and UIM coverage because it would have exposed Tyco to an additional $500,000 deductible per claim for UM and UIM.[1] Additionally, Goetz surmised that the individuals most likely to make UM or UIM claims would be employees, thus covered by workers' compensation for any actual injury. In short, Goetz intended to deny the offer of optional UM and UIM coverage because it would unnecessarily expose Tyco to additional liability.

Despite Goetz's expressed desire to decline optional UM and UIM coverage, he admittedly failed to correctly execute the denial form. Additionally, the form did not comply with S.C.Code Ann. § 38–77–350(A). Nonetheless, Goetz testified

---

[1]. Tyco had a $500,000 deductible on all claims made against this policy of insurance. Claims for UM and UIM would not have been covered by this deductible, thus exposing Tyco to additional liability.

that he understood American Home's offer of additional UM and UIM and, in his view, the manner in which he rejected it conveyed that he did not wish to purchase such coverage.

## Issues

This Court granted a writ of certiorari and the parties present the following issue for review:

Did the court of appeals err in holding American Home did not make a meaningful offer of UM and UIM insurance coverage?

## Standard of Review

■■■ When reviewing a grant of summary judgment, an appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Id.;* Rule 56(c), SCRCP. When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Id.*

## Analysis

■■■ Grinnell and American Home argue the court of appeals erred in finding no meaningful offer of additional UM and UIM coverage was made and thus committed error in affirming the trial court's reformation of the insurance policy. We agree.

■■■ S.C.Code Ann. § 38–77–160 requires an insurer to offer UM and UIM coverage to the insured.[2] An insurer's

---

2. In pertinent part, this section states:

Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage in addition to the mandatory coverage prescribed by section 38–77–150. Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute.

offer of UM and UIM coverage must be "meaningful." *See Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 262–63, 626 S.E.2d 6, 12 (2005). Critically, "[t]he purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage 'is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs.'" *Id.* (citing *Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 352, 608 S.E.2d 569, 573 (2005)). All law with respect to a meaningful offer of additional UM and UIM coverage must be applied so as to effectuate this stated purpose.

■ In *State Farm Mutual Automobile Insurance Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987), this Court enunciated a four-part test that is applied to determine whether an offer of UM and UIM was meaningful. *See Wannamaker,* 291 S.C. at 521, 354 S.E.2d at 556. The four criteria an insurer must meet in order for the offer to be considered meaningful are:

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing;

(2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms;

(3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and

(4) the insured must be told that optional coverages are available for an additional premium.

*Id.* at 521, 354 S.E.2d at 556.

In response to the *Wannamaker* decision, the South Carolina General Assembly enacted S.C.Code Ann. § 38–77–350, which establishes certain requirements for forms used by insurers in making offers of optional insurance coverages. Section 38–77–350(A) states:

The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by

---

S.C.Code Ann. § 38–77–160 (2002).

insurers for all new applicants. The form, at a minimum, must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage;

(2) a list of available limits and the range of premiums for the limits;

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires;

(4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages;

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

S.C.Code Ann. § 38–77–350(A). If the insurer's form complies with these requirements, section 38–77–350(B) provides a conclusive presumption in favor of the insurer that the insured made a knowing waiver of the option to purchase additional coverages.[3]

 Nonetheless, failure to comply with section 38–77–350(A) does not automatically require judicial reformation of a policy. Rather, even where an insured is not entitled to the presumption that it made a meaningful offer, it may prove the sufficiency of its offer by showing that it complied with *Wannamaker. See Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 420, 618 S.E.2d 909, 918 (2005) (holding whether a meaningful offer was made depends on the facts and circumstances of a particular case). Further, "evidence of the insured's knowledge or level of sophistication is relevant and admissible when analyzing, under *Wannamaker,* whether an insurer intelligibly advised the insured of the nature of the optional UM or UIM coverage." *Id.*

As stated previously, the requirement of a meaningful offer of additional UM and UIM coverage is intended to protect an insured. A meaningful offer of additional UM and UIM

---

**3.** Whether a form complies with the statutory requirements is a question of law for the court. *Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 389 S.E.2d 657 (1990).

makes as certain as possible that an insured has actual knowledge of his options with respect to such coverages and is therefore able to make an informed decision with respect to his desired coverage. *Floyd,* 367 S.C. at 262–63, 626 S.E.2d at 12 (citing *Progressive Cas. Ins. Co.,* 362 S.C. at 352, 608 S.E.2d at 573 ("The purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage 'is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs.' ")).

We find that, under the particular facts of this case, American Home made a meaningful offer of additional UM and UIM coverage to Grinnell and thus the court of appeals erred in affirming the trial court's grant of summary judgment to Wood and GEICO.

American Home concedes that its form did not comply with the requirements of section 38–77–350(A) and it is thus not entitled to the presumption that it made a meaningful offer of additional UM and UIM to Grinnell. If the only evidence presented in this record were the statutorily deficient and incorrectly executed offer form, the court of appeals opinion would have to be affirmed. However, the record presented in this case is replete with uncontroverted evidence that the insured knew its options with respect to additional UM and UIM coverage in South Carolina and made an informed decision as to the amount of coverage that best suited its needs. Because Goetz testified that he knew his options with respect to additional UM and UIM coverage in South Carolina and knowingly declined the offer, the court of appeals decision creates an absurd result.

The record in this matter contains evidence that a meaningful offer was made under *Wannamaker.* First, the record contains ample evidence that Goetz knew his options with respect to additional UM and UIM coverage, thus, based on the sophistication of the parties, American Home made a commercially reasonable offer to Tyco. Second, the offer form listed five different split limits for optional coverage and also included an additional line where Goetz could have elected to insert an amount other than those listed. Third, American Home discussed the nature of optional coverage with Goetz at

each renewal period and Goetz specifically expressed his understanding of optional coverage. Fourth, the offer form indicated coverage was available at an additional premium. Therefore, given the facts of this case with respect to the parties' level of sophistication, we find that American Home made a meaningful offer of additional UM and UIM coverage to Grinnell.

## CONCLUSION

We reverse the court of appeals' decision affirming the trial court's grant of summary judgment because, under the particular facts and circumstances of this case, American Home made a meaningful offer of UM and UIM coverage to Grinnell.

BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur. PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the majority's decision to reverse the grant of summary judgment against American Home. As explained in my concurring opinion in *Ray v. Austin,* 388 S.C. 605, 698 S.E.2d 208 (2010)(Shearouse Adv. Sh. No. 32 at ——), it is my opinion that where the insured does not dispute that the insurer made a meaningful offer of underinsured and/or uninsured motorist coverage as required by S.C.Code Ann. § 38–77–160 (2002), any request for reformation of the insurance contract must fail as a matter of law. In my opinion, in a situation such as the one presented here, where the insured's agent maintains he made a knowing and informed decision to reject additional coverage, there is no need to resort to the *Wannamaker*[4] factors or to determine whether American Home's form complied with S.C.Code Ann. § 38–77–350 (2002 and Supp.2009). The purpose of requiring a meaningful offer is to protect the insured. *See Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 608 S.E.2d 569 (2005). In my view, a declaration by the insured that it made its decision, knowing all of its options, ends the inquiry.

---

4. *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987).