698 S.E.2d 208

Richard T. RAY a/k/a Richard Todd Rae, Appellant,

v.

Jonathan H. AUSTIN a/k/a Jonathan Austin Henry, Respondent.

Richard T. Ray a/k/a Richard Todd Rae, Appellant,

v.

Lumbermens Mutual Casualty Company, d/b/a
Kemper Insurance Company, Respondent.

No. 26858.

Supreme Court of South Carolina.

Heard April 8, 2010.

Decided Aug. 16, 2010.

Samuel Darryl Harms, Harms Law Firm, PA, of Greenville, for Appellant.

M. Todd Loftis, of Howser, Newman & Besley, LLC, Mason A. Summers and David A. Anderson, both of Richardson, Plowden, and Robinson, all of Columbia, for Respondent.

Justice HEARN.

In this case, we decide whether Lumbermens Mutual Casualty Company, doing business as Kemper Insurance Company ("Lumbermens"), made a meaningful offer of underinsured motorist coverage ("UIM") to Cintas Corporation ("Cintas"). We find a meaningful offer was made and affirm the circuit court's order granting summary judgment in favor of Lumbermens.

## FACTUAL/PROCEDURAL BACKGROUND

Cintas began purchasing automobile insurance from Lumbermens through the insurance brokerage firm of Aon Risk Services Incorporated ("Aon") in 1989. In 1991, Cintas designated Kevin Ryan as its agent to purchase automobile insurance on its behalf. From that point forward, Ryan met and consulted with Tom Purtell, Senior Vice President of Aon, on an annual basis to discuss the insurance options available to Cintas and to renew Cintas's policy. That same year, Cintas adopted the risk management strategy of declining uninsured motorist coverage (UM) and UIM in states where such coverage was not required. For states mandating coverage, Cintas purchased the minimum amount required by law. According to Ryan, Cintas implemented this strategy because it obtained other insurance, namely workers' compensation, to cover injuries sustained by employees while driving vehicles owned by Cintas.

On June 25, 2002, Ryan and Purtell met to renew Cintas's insurance policy with Lumbermens for the upcoming year. At the meeting, Purtell presented Ryan with the insurance policy provided by Lumbermens along with state specific forms offering UM and UIM coverage. Purtell explained to Ryan that Cintas had the option to purchase UM and UIM coverage in states where coverage was not required. Purtell also gave Ryan the opportunity to review the state specific forms offering UM and UIM coverage and answered Ryan's questions. Thereafter, Ryan signed the insurance policy and accompanying state forms on behalf of Cintas. Consistent with Cintas's risk management strategy, Ryan rejected UM and UIM coverage in states where coverage was not required and purchased the minimum amount required by law in states man-

dating coverage. Additionally, Cintas's risk management strategy was inserted into the language of the policy as an endorsement. The endorsement read: "For all states, where permitted to do so, the Insured has elected to reject Uninsured and/or Underinsured Motorists coverage. In those states, where the rejection of coverage is not permitted, the lowest permissible coverage limit applies."

The state specific form provided by Lumbermens for South Carolina was entitled "Offer of Optional Additional Uninsured Motorist and Optional Underinsured Motorist Coverage" ("the form"). The form, itself, was four pages long. On pages one and two of the form, it explained the nature of UM and UIM coverage. With regard to UIM coverage, the form stated:

[Y]ou have the right to buy UIM coverage in limits up to the limits of liability coverage which you will carry under your automobile insurance policy. Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums which you will be charged have been printed by your insurance company upon this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits in the blanks provided. If your insurance company is allowed to market those limits within this State, then your insurance agent will fill in the amounts of the increased premium.

On page three, the form contained blank lines for the insurance company to fill in commonly sold limits of UIM coverage along with increases in premium for the selection of such coverage. In the form issued to Ryan, Lumbermens failed to fill in the blanks. Also, on page three, the form asked, "[d]o you wish to purchase underinsured motorist coverage?" During Ryan's deposition, he offered conflicting testimony as to whether he personally checked the "no" box next to this question. Ryan also failed to sign under the "no" box as required by the form. However, Ryan signed the very last page of the form. By signing, Ryan acknowledged he had read the offers of UM and UIM coverage and indicated whether he wished to receive such coverage in the space provided.

Shortly after the policy became effective, Richard Ray, a Cintas employee, was severely injured in an automobile accident when Jonathan Austin failed to stop at a red light and collided with the vehicle driven by Ray. At the time of the accident, Ray was driving a vehicle owned by Cintas.[1]  Following the accident, Ray filed a negligence action against Austin. Austin, through his insurance carrier, Safe Auto Insurance Company, agreed to tender the limits of his automobile policy in exchange for Ray entering into a Covenant Not to Execute.[2] Ray then filed a declaratory judgment action against Lumbermens, contending Lumbermens failed to make a meaningful offer of UIM coverage to Cintas.[3]  Accordingly, Ray asked the circuit court to reform the policy to provide UIM coverage in an amount equal to the five million dollar liability limits of the policy issued by Lumbermens.

Thereafter, Ray and Lumbermens filed cross-motions for summary judgment.  The circuit court denied Ray's motion for summary judgment and granted Lumbermens' motion for summary judgment, finding Lumbermens made a meaningful offer of UIM coverage to Cintas.  Specifically, the circuit court found the form complied with the requirements of section 38–77–350(A)–(B) of the South Carolina Code (Supp. 2009), entitling Lumbermens to the statutory presumption that a meaningful offer was made.  In the alternative, the circuit court found Lumbermens made a meaningful offer of UIM coverage under *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987).  This appeal followed.

## STANDARD OF REVIEW

When reviewing the trial court's decision to grant summary judgment, an appellate court applies the same standard applied by the trial court.  *Lanham v. Blue Cross &*

---

1. To date, Ray has received workers' compensation benefits in the amount of $574,823.48.

2. Austin maintained $15,000 in liability coverage, the minimum required under South Carolina law at the time of the accident.

3. After the filing of the declaratory judgment action against Lumbermens, Ray's lawsuits against Austin and Lumbermens were consolidated.

*Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party is entitled to prevail as a matter of law. Rule 56(c), SCRCP; *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party." *David v. McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006).

## LAW/ANALYSIS

Initially, we must determine whether the form complied with the requirements set forth in section 38–77–350(A), entitling Lumbermens to the statutory presumption that a meaningful offer was made. We hold it did not.

Automobile insurance carriers are required to offer UIM coverage up to the limits of the insured's liability coverage. S.C.Code Ann. § 38–77–160 (2002). The insurer bears the burden of establishing that it made a meaningful offer of UIM coverage. *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 405, 475 S.E.2d 758, 759 (1996). "[A] noncomplying offer has the legal effect of no offer at all." *Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990). If the insurer fails to comply with its duty to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured. *Butler,* 323 S.C. at 405, 475 S.E.2d at 760.

The insurer enjoys a presumption that a meaningful offer of UIM coverage has been made when a form offering UIM coverage complies with the requirements set forth in section 38–77–350(A) and is signed by the named insured. S.C.Code Ann. § 38–77–350(A)–(B). Section 38–77–350(A) provides:

The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at a minimum,

must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage;

(2) a list of available limits and the range of premiums for the limits;

(3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;

(4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;

(5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

The circuit court erred in finding the form offering UIM coverage to Cintas complied with the statutory requirements of section 38–77–350(A). Page three of the form contained three blanks for Lumbermens to fill in the commonly sold limits of UIM coverage along with corresponding increases in premium for selecting such coverage. Lumbermens failed to fill in the blanks. Accordingly, the form failed to comply with the requirements of section 38–77–350(A)(2). As such, Lumbermens was not entitled to the statutory presumption that a meaningful offer of UIM coverage was made.

■ Next, we must determine whether Lumbermens made a meaningful offer of UIM coverage to Cintas under *Wannamaker*.

■ Even where the insurer is not entitled to the statutory presumption that a meaningful offer of UIM coverage was made, the insurer can still demonstrate that a meaningful offer of UIM coverage was made to the insured under *Wannamaker*. *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 264, 626 S.E.2d 6, 12 (2005). In *Wannamaker*, this Court established a four part test to determine whether a meaningful offer of UIM coverage has been made. 291 S.C. at 521, 354 S.E.2d at 556. In order for an insurer to make a meaningful offer of UIM coverage:

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing;

(2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms;

(3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and

(4) the insured must be told that optional coverages are available for an additional premium.

*Id.*

▆▆▆▆ "The purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage 'is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs.'" *Floyd,* 367 S.C. at 262–63, 626 S.E.2d at 12 (citing *Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 352, 608 S.E.2d 569, 573 (2005)). The insurer is required to make a meaningful offer of UIM coverage to commercial insureds even if the insured has expressed a desire not to purchase such coverage. *Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 420, 618 S.E.2d 909, 918 (2005). "One who is ignorant and unwary might require more explanation than a sophisticated applicant." *Anders v. S.C. Farm Bureau Mut. Ins. Co.,* 307 S.C. 371, 376, 415 S.E.2d 406, 409 (Ct.App.1992). "[E]vidence of the insured's knowledge or level of sophistication is relevant and admissible when analyzing, under *Wannamaker,* whether an insurer intelligibly advised the insured of the nature of the optional UM or UIM coverage." *Croft,* 365 S.C. at 420, 618 S.E.2d at 918.

We find Lumbermens met three of the four *Wannamaker* factors. Initially, Lumbermens notified Cintas of the availability of UIM coverage in a commercially reasonable manner. Consistent with their ten-year course of dealings, Purtell, on behalf of Lumbermens, met with Ryan, Cintas's insurance purchasing agent, to discuss the insurance options available to Cintas. At the meeting, Purtell explained to Ryan that Cintas had the option to purchase UIM coverage. Additionally, Purtell presented Ryan with the form offering UIM coverage. The form itself intelligibly advised Cintas of the nature of UIM coverage. The form explained that UIM coverage is

triggered when liability coverage is insufficient to cover the damages of the insured. Finally, the form stated that UIM coverage was available for an additional premium.

The only remaining element to analyze under *Wannamaker* is whether Lumbermens specified the limits of UIM coverage and did not merely offer such coverage in general terms. Lumbermens contends it satisfied this prong of the *Wannamaker* test by advising Cintas of its option to purchase UIM coverage "up to the limits of liability coverage." If we were to find that such a general statement satisfied this prong of the *Wannamaker* test, we would essentially do away with this element altogether. On the other hand, if we were to find Lumbermens failed to make a meaningful offer of UIM coverage because it failed to offer coverage in more specific terms, we would reach the absurd result of reforming the insurance policy to give Cintas coverage it understood, did not want, and clearly rejected. Moreover, in reaching this absurd result, we would turn the policy objective behind the meaningful offer requirement in *Wannamaker* on its head.

We refuse to apply the *Wannamaker* factors in a manner that contravenes the very purpose behind the meaningful offer requirement. The clear purpose of the meaningful offer requirement is to protect insureds—to give them the opportunity "to know their options and to make an informed decision as to which amount of coverage will best suit their needs." *Floyd*, 367 S.C. at 262–63, 626 S.E.2d at 12 (internal quotation omitted). In this case, there can be no doubt that Lumbermens informed Cintas of its option to purchase UIM coverage. Lumbermens explained to Cintas the nature of UIM coverage through oral discussions and in writing. During Ryan's deposition, he confirmed that Purtell informed him of the availability of UIM coverage. Ryan stated, "[w]e [he and Purtell] would talk about whether we wanted to buy any additional coverage. Of course, our stance was no. We knew that additional coverage had additional cost associated with it." The facts of this case reveal that Cintas made a business decision to refuse UIM coverage. Cintas made this decision with full awareness of the nature of the coverage it was rejecting. Accordingly, we find Lumbermens made a meaningful offer of UIM coverage to Cintas.

For the foregoing reasons, the ruling of the circuit court is **AFFIRMED AS MODIFIED.**

TOAL, C.J., BEATTY, KITTREDGE, JJ., concur.
PLEICONES, J., concurring separately.

Justice PLEICONES.

I concur in the majority's decision to affirm the circuit court order granting summary judgment to Lumbermens. I write separately because I conclude that we need not reach the *Wannamaker*[4]/statutory presumption[5] "meaningful offer" issues where, as here, the insured's agent does not contend he lacked all the information necessary to make an intelligent decision whether and in what amount to purchase underinsured and uninsured coverage. *See* S.C.Code Ann. § 38–77–160 (2002).

The typical "meaningful offer" case arises when an insured or third party to the insurance contract seeks to reform that contract to include underinsured or uninsured coverage, alleging that the insurer failed to meet its obligation to make a sufficient offer under § 38–77–160. In essence, the insurer can rely on the *Wannamaker* factors or a statutorily acceptable form as an affirmative defense in such a suit, relying on this evidence to show it in fact conveyed the requisite information to the insured. In my opinion, however, where the insured itself does not dispute it had all the information necessary to make an informed, intelligent choice, there is no need to discuss whether the form was acceptable under § 38–77–350 or whether *Wannamaker* has been satisfied.

I concur in the decision to uphold the grant of summary judgment here.

---

4. *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987).

5. S.C.Code Ann. § 38–77–350 (2002 and Supp.2009).