**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1373**

STANLEY MCWHITE,

             Plaintiff - Appellant,

       v.

ACE AMERICAN INSURANCE COMPANY,

             Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Florence.  R. Bryan Harwell, District Judge.
(4:07-cv-01551-RBH)

Argued: December 8, 2010        Decided: February 25, 2011

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme
Court of the United States, sitting by designation, and DUNCAN
and AGEE, Circuit Judges.

Affirmed by unpublished opinion.  Justice O'Connor wrote the
opinion, in which Judge Duncan and Judge Agee joined.

**ARGUED:** Stephen J. Wukela, WUKELA LAW FIRM, Florence, South
Carolina, for Appellant.  John Robert Murphy, MURPHY &
GRANTLAND, PA, Columbia, South Carolina, for Appellee.  **ON
BRIEF:** Jeffrey C. Kull, MURPHY & GRANTLAND, PA, Columbia, South
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

O'CONNOR, Associate Justice:

Appellant Stanley McWhite appeals the district court's grant of summary judgment to Appellee ACE American Insurance Company in his suit claiming that his employer's automobile insurance policy includes or should be reformed to include underinsured motorist coverage. For the reasons set forth below, we affirm the judgment of the district court.

I.

Appellant Stanley McWhite was employed by Ahold Americas Holdings, Inc. On February 10, 2005, McWhite was driving a tractor-trailer truck owned by Ahold, when the truck jack-knifed. McWhite exited the truck, and while setting up warning triangles along the road, as required by Ahold policy and Department of Transportation regulations, McWhite was struck and injured by a vehicle driven by an "underinsured" motorist.[1]

After recovering $25,000 from the driver of the vehicle, see Covenant Not to Execute, J.A. 57, McWhite filed suit against his employer's insurance company, Appellee ACE American

---

[1] South Carolina law defines an "[u]nderinsured motor vehicle" as "a motor vehicle as to which there is bodily injury liability insurance or a bond applicable at the time of the accident in an amount of at least that specified in Section 38-77-140 and the amount of the insurance or bond is less than the amount of the insureds' damages." S.C. Code Ann. § 38-77-30(15) (2002).

Insurance Company, in the Florence County, South Carolina, Court of Common Pleas. McWhite sought a declaratory judgment that he is an "insured" for purposes of underinsured motorist ("UIM") coverage under a policy issued by ACE to Ahold. ACE removed the case to the U.S. District Court for the District of South Carolina on the grounds of diversity of citizenship.

The district court ordered the parties to engage in discovery on the question of whether Ahold's insurance policy contained a UIM endorsement and, if not, whether ACE had made Ahold a meaningful offer of UIM coverage, as required by South Carolina law.

After discovery, the district court granted summary judgment for Appellee ACE. McWhite v. ACE American Ins. Co., No. 4:07-cv-01551-RBH, 2010 WL 1027872 (D.S.C. Mar. 17, 2010). The district court held that Ahold's insurance policy did not contain UIM coverage. Id. at *3. The district court further held that ACE had not made a meaningful offer of UIM coverage under S.C. Code Ann. § 38-77-350, id. at *4, and noted that it had "some concern" about whether ACE, alternatively, had made a meaningful offer pursuant to the South Carolina Supreme Court's decision in State Farm Mutual Auto Insurance Company v. Wannamaker, 354 S.E.2d 555 (S.C. 1986). McWhite, 2010 WL 1027872, at *5. The district court ultimately "[a]ssum[ed] without deciding" that no meaningful offer had been made and

3

that the policy could be reformed to include UIM coverage. Id. at *5–*6. It concluded, however, that McWhite would not constitute an "insured" under South Carolina law for purposes of UIM coverage, and thus that he would not benefit from any reformation of the contract. Id. at *8.

McWhite appeals the district court's grant of summary judgment for ACE.

II.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to McWhite. See Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" Merrit v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). In this diversity action, we must apply South Carolina law. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). We first address whether the policy contained UIM coverage and then turn to whether ACE made a meaningful offer of such coverage.

A.

McWhite argues that Ahold's insurance policy in effect at the time of the accident in February 2005 includes UIM coverage. Ahold argues that it does not, and the district court agreed with Ahold. McWhite, 2010 WL 1027872, at *2-*3.

Both parties point the Court to Endorsement #163, entitled "Limits of Insurance—Uninsured Motorists/Underinsured Motorists" for the period from December 1, 2004, to December 1, 2005. Under a heading for Uninsured Motorists Coverage and Underinsured Motorists Coverage, Endorsement #163 lists a $40,000 limit for South Carolina. J.A. 163. The parties offer different interpretations of the $40,000 notation.

Ahold explains that Endorsement #163 states that it amends "Item 2 of the Declarations." Id. Ahold then turns to Item 2 in the insurance policy listing the policy period from May 19, 2004, to December 1, 2004. J.A. 116-117. In Item 2, there is a box labeled "Underinsured Motorists"; it says "See Endt. 6," which Ahold explains was the predecessor to Endorsement #163, Appellee's Br. at 54 n.15, and "Financial Responsibility*." The asterisk is linked to a footnote at the bottom of the page that states "where rejection not permitted." J.A. 117. Ahold explains that since rejection of UIM coverage is permitted in South Carolina, reading Endorsement #163 together with Item 2 clearly indicates that Ahold did not desire any UIM coverage.

5

Appellee's Br. at 54.  Ahold explains that the $40,000 in the Endorsement applies only to uninsured motorist coverage, which South Carolina does not permit an insured to reject.  Id.

In contrast, McWhite argues that the "Item 2" in the original policy is irrelevant because it does not apply to the period in which the accident occurred.  He urges the Court to look only to the "Renewal Endorsement" for the term from December 1, 2004, to December 1, 2005.  J.A. 153.  The Renewal Endorsement states, "This Endorsement changes the policy."  Id. The Renewal Endorsement has a line for Underinsured Motorists that states "See Endt. #163," which, as previously explained, lists $40,000 in coverage for South Carolina.  Id.  Based on the Renewal Endorsement and Endorsement #163, McWhite argues that there is no provision in the insurance contract for the applicable period that rejects UIM coverage.  Appellant's Br. at 22–24.

The South Carolina Supreme Court has explained that "[a] contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation."  S.C. Dep't of Natural Res. v. Town of McClellanville, 550 S.E.2d 299, 303 (S.C. 2001).  "It is a question of law for the court whether the language of a contract is ambiguous."  McGill v. Moore, 672 S.E.2d 571, 574 (S.C. 2009).  After considering the parties' arguments, the district court held that the policy is ambiguous

6

with regard to whether it included UIM coverage in South Carolina. McWhite, 2010 WL 1027872, *3. We agree.

In light of this ambiguity, we must look to extrinsic evidence of the intent of the parties to the contract. Dixon v. Dixon, 608 S.E.2d 849, 852 (S.C. 2005) ("If the vital terms of a contract are ambiguous, then, in an effort to determine the intent of the parties, the court may consider probative, extrinsic evidence."); see also DeVore v. Piedmont Ins. Co., 142 S.E. 593 (S.C. 1928) (explaining that extrinsic, parol evidence is permissible to explain the intent of the parties to an ambiguous insurance contract). Normally, when a contract is held to be ambiguous, the intent of the parties is a question of fact for the jury. Garrett v. Pilot Life Ins. Co., 128 S.E.2d 171, 174 (S.C. 1962). In this case, however, the record contains uncontroverted evidence that neither Ahold nor ACE—the parties to the contract—intended to include UIM coverage. See Deposition of Nicholas A. Parillo at 38–40 (J.A. 263–265); Deposition of Tony Dingrando at 35, 38–39 (J.A. 225, 282–283). This question is therefore appropriate for summary judgment, and we affirm the district court's holding that the insurance policy, as construed in light of the uncontroverted evidence of the parties' intent, does not include UIM coverage.

7

B.

We turn now to whether ACE made a meaningful offer of UIM coverage to Ahold. South Carolina Code Ann. § 38-77-160 requires an insurer to offer UIM coverage to the insured,[2] and the South Carolina Supreme Court has explained that the offer must be "meaningful." See Floyd v. Nationwide Mut. Ins. Co., 626 S.E.2d 6, 12 (S.C. 2005). If no meaningful offer is made, then "the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured." Ray v. Austin, 698 S.E.2d 208, 212 (S.C. 2010). The meaningful offer requirement can be satisfied in one of two ways: compliance with S.C. Code Ann. § 38-77-350(A) or satisfaction of the four-part test the South Carolina Supreme Court established in State Farm Mutual Insurance Co. v. Wannamaker, 354 S.E.2d at 556. We consider each in turn.

S.C. Code Ann. § 38-77-350(A) establishes requirements for forms that insurers use to make offers of optional insurance,

---

[2] That section, as applicable at the time of the insurance contract in this case, provided, as relevant: "Automobile insurance carriers shall offer . . . at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by the statute." S.C. Code. Ann. § 38-77-160 (2002).

8

including UIM coverage.  At the time of the contract at issue here, the provision stated:

> (A) The director or his designee shall approve a form which automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. The form, at a minimum, must provide for each optional coverage required to be offered:
>
> > (1) a brief and concise explanation of the coverage,
> >
> > (2) a list of available limits and the range of premiums for the limits,
> >
> > (3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires,
> >
> > (4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,
> >
> > (5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

S.C. Code Ann. § 38-77-350(A) (2002).  At the time of the contract in question, the statute stated that "[i]f this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage . . . ."  Id. § 38-77-350(B); see also Grinell Corp. v. Wood, 698 S.E.2d 796, 799 (S.C. 2010) (holding that if the offer form complies with the statutory requirements, then there is a "conclusive presumption in favor of the insurer

9

that the insured made a knowing waiver of the option to purchase additional coverage").

Appellant McWhite contends that the offer ACE made to Ahold deviates from the statutory requirements in several ways. He argues that ACE improperly completed the form by failing to list the available limits of UIM coverage up to the liability limit of five million dollars and by failing to specify the range of premiums for the different coverage limits. Appellant's Br. at 11-12. He argues that Ahold's employee, Nicholas Parillo, did not properly complete and execute the form in the manner required because he failed personally to mark an "x" in a box indicating that Ahold did not want UIM coverage and because he signed the acknowledgement line of the offer form but did not sign a second line where the form indicates the insured must sign if it intends to decline coverage. Id. at 12.

The district court held that Parrillo's failure to sign the line to decline coverage, in addition to signing the general acknowledgment line, rendered the form improperly completed such that, "the insurer cannot rely on the statutory presumption." McWhite, 2010 WL 1027872, at *4. It is sufficient, however, to rely on ACE's failure to complete the form with "a list of available limits and the range of premiums for the limits," as required by S.C. Code Ann. § 38-77-350(A)(2). The South Carolina Supreme Court recently held that a nearly identical

10

omission by an insurer meant that "the form failed to comply with the requirements of section 38-77-350(A)(2)," such that the insurer "was not entitled to the statutory presumption that a meaningful offer of UIM coverage was made." Ray, 698 S.E.2d at 212.

Even though ACE is not entitled to the statutory presumption that it made a meaningful offer, it can still demonstrate that it made a meaningful offer by satisfying the four-part test the South Carolina Supreme Court established in Wannamaker. Wannamaker requires that:

> (1) the insurer's notification process is commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

Wannamaker, 354 S.E.2d at 556. The South Carolina Supreme Court has held that an insurer must make a meaningful offer of UIM coverage even in the context of a policy like the one at issue here, which is a "fronting policy"—a policy that "contains a deductible equal to the coverage limits contained in the policy."[3] Croft v. Old Republic Ins. Co., 618 S.E.2d 909, 911

---

[3] Nicholas Parillo explained that Ahold needed such a policy because the "fronting carrier" is "admitted to do business" in the 42 states where Ahold operates and "meets the requirements of each of those states for providing automobile insurance." (Continued)

11

(S.C. 2005); id. at 917. In applying the Wannamaker test, "evidence of the insured's knowledge or level of sophistication is relevant and admissible when analyzing . . . whether an insurer intelligibly advised the insured of the nature of the optional . . . UIM coverage." Id. at 918.

In this case, Ahold and its Vice President for Risk Management Nicholas Parillo are clearly sophisticated. The record shows that Parillo has decades of experience in insurance and risk management, is responsible for procuring Ahold's insurance coverage in the 42 states in which it operates, and has some specific knowledge of South Carolina's UIM coverage law, including that UIM coverage is optional in South Carolina. Deposition of Nicholas A. Parillo at 5–9, 12–13. Despite this, the district court relied on a South Carolina Court of Appeals case, Grinnell Corp. v. Wood, 663 S.E.2d 61 (S.C. Ct. App. 2008), which held that "an insurer failed to make a meaningful offer despite the sophistication of a risk manager where the operational coverages printed on the form were for amounts far less than the liability limit" and "the increased premium

---

Deposition of Nicholas A. Parillo at 19. He further explained that "[i]f Ahold did not have a fronting insurer, [it] would have had to have [its] captive insurance company admitted to do business in each of those 42 states," which "would have been prohibitively expensive." Id.

12

charges were left blank," in addition to other defects. McWhite, 2010 WL 1027872, *5. Based on the S.C. Court of Appeals' opinion in Grinnell, the district court stated that it had "some concern with whether a meaningful offer was made under the Wannamaker factors." Id.

Since the district court issued its opinion, however, the South Carolina Supreme Court reversed the S.C. Court of Appeals' decision in Grinnell and held that despite technical failures in compliance with the Wannamaker factors, a meaningful offer was made because the record was "replete with uncontroverted evidence that the insured knew its options with respect to additional . . . UIM coverage in South Carolina and made an informed decision as to the amount of coverage that best suited its needs." Grinnell Corp. v. Wood, 698 S.E. 2d 796, 800 (S.C. 2010). The Court noted that to hold no meaningful offer had been made in those circumstances would produce an "absurd result." Id.

The South Carolina Supreme Court relied on the same reasoning to find that a meaningful offer had been made in Ray v. Austin, 698 S.E.2d 208, a case with facts very similar to this one and issued the same day as Grinnell. In Ray, Cintas Corporation—just like Ahold—"adopted the risk management strategy of declining . . . UIM in states where such coverage was not required." Id. at 210. Lumbermens Insurance provided

13

Cintas with a UIM coverage form that left blank the lines intended to show the increases in premiums for various levels of UIM coverage, and Cintas's employee failed to sign next to the box where he checked "no" to decline UIM coverage. Id. at 211. The South Carolina Supreme Court held that Lumbermens had satisfied three of the Wannamaker factors, but may not have "specified the limits of UIM coverage and not merely offer[ed] such coverage in general terms." Id. at 213. The Court explained that if it were to hold that there was no meaningful offer, it "would reach the absurd result of reforming the insurance policy to give Cintas coverage it understood, did not want, and clearly rejected." Id. In the face of that outcome, the Court "refuse[d] to apply the Wannamaker factors in a manner that contravenes the very purpose behind the meaningful offer requirement"—"to protect insureds" and "give them the opportunity 'to know their options and to make an informed decision as to which amount of coverage will best suit their needs.'" Id. (quoting Floyd, 626 S.E.2d at 12). The Court therefore found that there was a meaningful offer. Id.

The facts of this case are analogous to those in Grinnell and Ray. ACE's offer satisfied three of the four Wannamaker factors. First, ACE notified Ahold, via a broker (McGriff), of the availability of UIM coverage in a "commercially reasonable" manner "in writing" by providing Ahold with its standard UIM

14

offer form. See J.A. 238-243. As in Grinnell, even a deficient form can constitute a "commercially reasonable" offer when the insured is a sophisticated party, as Ahold's agent, Parillo, is here. Grinnell, 698 S.E.2d at 800 ("[T]he record contains ample evidence that [the insured] knew his options with respect to additional . . . UIM coverage, thus, based on the sophistication of the parties, [the insurer] made a commercially reasonable offer to [the insured]."). Second, the UIM coverage offer form itself "intelligibly advise[d]" Ahold of "the nature of the optional coverage." Offer of Optional Additional Uninsured Motorist Coverage and Optional Insured Motorist Coverage, J.A. 242 ("*Underinsured motorist coverage* compensates you . . . for amounts which you may be legally entitled to collect as damages from an owner or operator of an at-fault underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle which is covered by some form of liability insurance, but that liability coverage is not sufficient to fully compensate you for your damages."); see Ray, 698 S.E. 2d at 213 ("The form itself intelligibly advised Cintas of the nature of UIM coverage."). Finally, the form also informed Ahold that UIM coverage was available for an "additional premium[]." J.A. 242; see Ray, 698 S.E.2d at 213.

As in Ray, Ahold fails, however, to satisfy the Wannamaker factor requiring the insurer to "specify the limits of optional

15

coverage and not merely offer additional coverage in general terms." Wannamaker, 354 S.E.2d at 556. Like the form at issue in Ray, ACE left blank the lines on the form for the premiums for different limits of UIM coverage, and Ahold's representative Parillo did not sign the line next to the "no" box, declining UIM coverage. J.A. 243; Ray, 698 S.E. 2d at 211. Like the insured in Ray, however, Ahold nonetheless understood the offer of UIM coverage and "made a business decision to refuse" it with "full awareness of the nature of the coverage it was rejecting." Ray, 698 S.E.2d at 213. Parillo explained in his deposition that Ahold's strategy "has always been to only purchase . . . underinsured motorist coverage in those states where it was mandated. . . . And where it was not mandated, not to purchase." Deposition of Nicholas A. Parillo at 38 (J.A. 263). Parillo explained that Ahold declined UIM coverage because, due to the nature of the fronting policy, Ahold itself would have born the added risk of payouts under the UIM coverage. Id. at 39–40 (J.A. 264–265).

Applying South Carolina's precedents, we decline to "reach the absurd result of reforming the insurance policy to give [Ahold] coverage it understood, did not want, and clearly rejected." Ray, 698 S.E.2d at 213. We therefore hold that, in the circumstances of this case, ACE made a meaningful offer of

16

UIM coverage.  There is, therefore, no justification for reforming the policy to include UIM coverage.

## III.

Because we hold that ACE made a meaningful offer of UIM coverage pursuant to the <u>Wannamaker</u> factors, we need not consider the district court's holding that McWhite does not constitute an "insured" under the policy and South Carolina law. <u>See</u> <u>Strawser v. Atkins</u>, 290 F.3d 720, 728 n.4 (4th Cir. 2002) (recognizing that "we may affirm on any ground revealed in the record").  For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.